Oscar Bacó Pasarell e Ignacio Báez Santiago, recurrentes, *v.* La Comisión Industrial de Puerto Rico y Ramón Montaner, en su carácter de Administrador del Fondo del Seguro del Estado, recurridos.

Núm. 26.—*Sometido:* Enero 10, 1938. *Resuelto:* Marzo 25, 1938.

*L. Longchamps,* abogado de los recurrentes; *Luis Negrón Fernández* y *G. Atiles Moréu,* abogados del Administrador del Fondo del Estado, recurrido.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

El presente es un recurso de revisión contra una resolución de la Comisión Industrial que declaró que los recurrentes no tenían derecho a indemnización porque el accidente que motivó los daños que sufrieron no provino de acto alguno o función inherente a su trabajo, ni ocurrió en el curso de éste y como consecuencia del mismo, ni en circunstancias tales que pudiera concluirse que en el momento del accidente esos empleados estuvieran realizando alguna gestión para beneficio del patrono.

Reportado el caso al Administrador del Fondo del Seguro del Estado, lo resolvió, en mayo 24, 1937, en contra de los recurrentes.

Éstos apelaron para ante la Comisión Industrial que señaló el 20 de octubre de 1937 para la vista. Comparecieron los recurrentes en persona y por su abogado y expusieron su caso, como sigue:

"Que allá en y entre 11:45 A. M. y 12 del día y en la fecha once de marzo de 1937, mientras trabajaban, como contable Ignacio Báez Santiago, y como oficinista Oscar Bacó Pasarell, para el patrono Arturo Lluberas & Sobrinos, con oficina en la Central San Francisco de la jurisdicción de Guayanilla, así como también en la ciudad de Yauco, oficina de don Arturo Lluberas, miembro principal de la firma comercial; que en ese día y hora y en ocasión que los recurrentes venían de la Central San Francisco con dirección a Yauco a almorzar para entonces recoger la correspondencia en la oficina de don Arturo Lluberas, en Yauco, para trasladarla a la Central San Francisco, viajando en automóvil de la propiedad de Oscar Bacó Pasarell y al desviar dicho automóvil con motivo de evitar estropear a un muchacho y debido a un movimiento incontrolable hacia la derecha de la carretera del vehículo en que viajaban los recurrentes, el mismo fué a chocar con un poste del alumbrado eléctrico. Que como consecuencia de la colisión con el poste del automóvil ambos recurrentes sufrieron la fractura del brazo derecho. Que en la fecha del accidente el recurrente Ignacio Báez Santiago derivaba un jornal de treinta dólares semanales de su patrono y el recurrente Oscar Bacó Pasarell derivaba un jornal de diez y ocho dólares semanales. Que las ocupaciones de los recurrentes no eran solamente limitadas a las oficinas de la factoría sino que también evacuaban diligencias en la población de Yauco y en distintas otras poblaciones para beneficio de su patrono y como parte de las ocupaciones de sus respectivos empleos, tales como la venta de mieles y azúcar a distintas fincas y el cobro de tales mieles y tales azúcares, todo ello para beneficio de su patrono, y los depósitos de ese dinero en la sucursal del Crédito y Ahorro Ponceño, de Yauco, y el retiro de dinero de la oficina del Crédito y Ahorro Ponceño, de Yauco, para el pago del personal de la factoría y campo. Visitas oficiales a las diversas colonias de la Central San Francisco; de manera que las ocupaciones de los recurrentes no terminaban precisamente en las oficinas de la Central San Francisco, ni precisamente en la oficina de don Arturo Lluberas, en

la ciudad de Yauco, sino que eran continuadas a través de las diversas horas del día, y hasta la tarde, en que se retiraban a sus hogares. En el sitio en que ocurrió el accidente es el único camino, la única vía que establece comunicación entre Yauco y la Central San Francisco, más adelante la Central Rufina, para ir a terminar en la población de Guayanilla, y el sitio especial del accidente fué a un kilómetro y medio de distancia antes de llegar a Yauco. Que los recurrentes el día y hora del accidente se encontraban en el sitio del mismo como una consecuencia natural y lógica de sus respectivos empleos con el patrono Arturo Lluberas & Sobrinos y como consecuencia de dichos empleos. . . . . Sostienen los recurrentes que el Administrador del Fondo del Seguro del Estado ha errado en estos casos al no aplicar la doctrina ya establecida en esta jurisdicción por esta Comisión en el caso de Alejandrina Álamo, reportado en el tomo primero de las Decisiones de esta Comisión, y otros más resueltos en igual sentido.''

También compareció el Administrador del Fondo del Seguro del Estado y expuso la teoría de su caso consistente en que no habiendo ocurrido el accidente en el curso del trabajo, no era compensable.

Se procedió a la práctica de la evidencia. Declararon Manuel Francisco Lluberas y los propios recurrentes Oscar Bacó e Ignacio Báez. Sus testimonios sostienen la teoría de su caso.

Las razones que tuvo la comisión para declarar sin lugar la apelación, constan de su resolución, como sigue:

''Nuestro estatuto no contiene definición alguna de lo que debe entenderse por la frase 'en el curso del trabajo y como consecuencia del mismo . . . .' Debemos por lo tanto recurrir a la jurisprudencia para determinar si, de acuerdo con los hechos tal como ocurrieron, según aparece de la vista pública celebrada, podemos llegar a una conclusión en cuanto a si los aquí peticionarios tienen derecho o no a la protección de la ley. De acuerdo con casi todas las leyes de compensaciones a obreros, una lesión para ser compensable, es necesario que haya sido recibida en el curso del trabajo. No existe fórmula alguna para determinar si en un caso específico la lesión del obrero ocurrió en el curso del trabajo, sino que habrá de determinarse haciendo referencia a los hechos y circunstancias del caso. Es imposible establecer una regla fija para determinar si un accidente

ocurrió mientras el trabajador estaba actuando dentro del radio del empleo, ya que ninguna regla podría gobernar todos los casos, y cada caso en sí debe ser gobernado por sus propios hechos. Sin embargo, una definición generalmente adoptada es la de que una lesión de un obrero surge en el curso de su trabajo cuando ocurre dentro del período de su empleo, en un sitio donde lógicamente deba estar, y mientras se dedica razonablemente a cumplir con los deberes de su cargo o empleo, o se dedica a cualquier actividad relacionada con el mismo. (71 C. J. 659.) Es el trabajo que el obrero o empleado está realizando en el momento de su lesión lo que determina si él estaba o no dedicado al cumplimiento de los deberes de su empleo. (*Sugar Valley Coal Co.* v. *Drake,* 117 N. E. 937, 66 Ind. App. 152.) Necesariamente tiene que ser así ya que el patrono no es un asegurador de la seguridad de sus empleados y su responsabilidad se limita solamente a las lesiones que ocurren al obrero mientras realiza algún acto en el curso de su empleo. (*Weis Paper Mill Co.* v. *Industrial Commission,* 127 N. E. 732, 293 Ill. 284.)

''Los peticionarios en este caso alegan que si bien es cierto que cuando sufrieron el accidente de automóvil que les causó la fractura de un brazo a cada uno de ellos, se dirigían al Pueblo de Yauco con el propósito de almorzar, era costumbre de su parte el traer la correspondencia de la oficina que tiene el patrono en dicha población a la Central San Francisco cuando regresaban de almorzar, y es basándose en esta circunstancia que ellos alegan tener derecho a la protección de la ley. Existe abundante jurisprudencia con respecto al particular. Se ha resuelto en infinidad de casos que al determinar la cuestión de la responsabilidad patronal por una lesión resultante de un viaje llevado a cabo por razones personales a la vez que de negocios, es esencial determinar desde un principio si el viaje en cuestión era uno del patrono o del empleado. Si el viaje es realizado para el patrono, el empleado está cumpliendo con los deberes de su cargo y actuando dentro del radio de su empleo mientras se dirige a o regresa de su viaje. Si el viaje es del empleado él no está dentro del radio de su empleo mientras se dirige a o regresa del viaje. La diligencia del patrono debe ser el factor principal, o por lo menos, una causa concurrente del viaje, y si es meramente incidental a lo que el empleado estaba realizando para su propio beneficio, la lesión no surge en el curso del trabajo ni como consecuencia del mismo. (71 C. J. 675.) Así tenemos que en el caso de un empleado que falleció mientras se dirigía al trabajo en su automóvil, aunque incidentalmente, a petición del patrono, él traía consigo algunas herramien-

tas del patrono, el accidente se declaró no compensable. *Eby* v. *Industrial Accident Commission of California*, 242 P. 901, 75 Cal. App. 280. En un caso en que el empleado fué muerto en un choque en la carretera mientras se dirigía en busca de su esposa, e incidentalmente realizaba una gestión de poca importancia para su patrono, se resolvió que este accidente no surgió en el curso del trabajo ni como consecuencia del mismo. *Mark's Dependents* v. *Gray*, 167 N. E. 181; 251 N. Y. 90. En un caso en que un vendedor murió mientras traía su familia de regreso de unas vacaciones en su automóvil, aunque incidentalmente el viaje incluía paradas para entrevistar deudores de su patrono, se resolvió que el accidente no ocurrió en el curso del trabajo ni como consecuencia del mismo. *Barragar* v. *Industrial Commission of Wisconsin*, 238 N. W. 368, 205 Wis. 550, 78 A.L.R. 679.

"Pero en el caso de autos, no hay duda de que el objeto o propósito principal y primordial del viaje era dirigirse a la población de Yauco con el fin de almorzar, y el traer la correspondencia era algo incidental a dicho viaje. . . . Bajo la teoría de que lesiones sufridas mientras el obrero se dirige a o regresa de almorzar, ocurren cuando el empleado se dedica a hacer algo para su conveniencia personal, entretenimiento o recreo, dichas lesiones no deben ser compensadas. Véase 71 C. J. 734, 735.

"A nuestro juicio, el caso de autos difiere del caso de Beaman, el cual se encuentra en el Tomo I de las Decisiones de la Comisión Industrial de Puerto Rico, pág. 99, por cuanto que en dicho caso el obrero Beaman se probó que todas las mañanas al salir de su casa para su colocación, se dirigía primero al pueblo de Bayamón a recoger la correspondencia que para su patrono estuviera depositada en el apartado de correos que éste tenía en dicha población, marchando entonces con ella a su oficina en el pueblo de Dorado, y que esto lo realizaba habitualmente por las mañanas, una vez al día. Tampoco encontramos semejanza alguna con el caso de Alejandrina Álamo, que se encuentra también en el Tomo I, pág. 109."

Los recurrentes presentaron una moción de reconsideración que fué declarada sin lugar. Entonces interpusieron el presente recurso de revisión para ante este Tribunal Supremo.

Hemos visto que no hay cuestión sobre los hechos. El problema a resolver consiste en determinar si el accidente que revelan es o no compensable por el Fondo del Seguro del

Estado de acuerdo con la ley en vigor en esta isla y con la jurisprudencia interpretativa de leyes similares en el continente.

■■ La ley en vigor lo es la núm. 45 de 1935 (Leyes de ese año (1) pág. 251). Por su artículo segundo prescribe que las disposiciones de la misma ''serán aplicables a todos los obreros y empleados que trabajen para los patronos a quienes se refiere el párrafo siguiente, que sufran lesiones o se inutilicen, o que pierdan la vida *por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo* o por enfermedades o muerte derivadas de la ocupación, según se especifican en el artículo siguiente.'' (Itálicas nuestras.)

La jurisprudencia es abundante, mas no uniforme. Tal como aparece resumida en 71 C. J. 733 y siguientes, de acuerdo con la regla general de que son compensables las lesiones sufridas por un empleado mientras realiza un trabajo que no está estrictamente dentro de sus deberes oficiales pero que es incidental al mismo, se ha resuelto que pueden indemnizarse los daños sufridos por el empleado mientras va a y vuelve de tomar sus comidas. Pero es lo cierto que también de acuerdo con la regla general que establece que las lesiones sufridas mientras se va para o se regresa del trabajo no son compensables, se ha rehusado indemnización cuando el daño sufrido por el empleado lo fué mientras iba en busca de sus comidas o regresaba de haberlas tomado.

Que los empleados en este caso cuando ocurrió el accidente habían salido de la oficina en que regularmente trabajaban y del sitio en que la oficina se encontraba y se dirigían en un automóvil de la propiedad de uno de ellos por un camino público hacia sus hogares para tomar sus alimentos del mediodía, es evidente. ¿Influye la circunstancia de que tenían el encargo de recoger la correspondencia que pudiera

tener su patrono en su oficina del pueblo para entregársela en su oficina del campo? Veámoslo.

En el caso de *Matter of Marks* v. *Gray*, 251 N. Y. 90, 167 N. E. 181, 182, citado y seguido en el de *Barragar* v. *Industrial Commission*, 78 A.L.R. 679, 682, hablando por la corte el Sr. Juez Cardozo, dijo:

"Un empleado en Nueva York notifica a su patrono que va a pasar sus vacaciones en Filadelfia, o quizá en un sitio más distante, digamos San Francisco o París. El patrono pide al empleado que durante su estadía allí visite a un deudor moroso y le exija el pago de una deuda. El viaje a Filadelfia, San Francisco o París no forma parte del empleo. Surgiría una cuestión distinta si el cumplimiento del servicio hiciera que el empleado tuviera que desviarse de su ruta, y como resultado de tal desviación sufriera las lesiones. . .

"No queremos decir que el servicio que se presta al patrono debe ser la única causa del viaje, pero debe ser por lo menos una causa concurrente. Para establecer responsabilidad, debe poderse hacer la inferencia de que el viaje se hubiese hecho aún si el motivo personal hubiera cesado. . El *'test'* en resumen es éste: Si el trabajo a realizarse por el empleado crea la necesidad del viaje, él está en el curso de su empleo, no obstante esté realizando al mismo tiempo un móvil propio. . . Sin embargo, si el trabajo no ha desempeñado papel alguno al crear la necesidad del viaje, si el viaje se hubiera realizado aunque se abandonara el motivo mercantil del mismo, y se hubiera cancelado al fracasar el móvil personal, aún sin cumplirse la parte mercantil del viaje, éste es entonces personal y el riesgo también lo es."

Aplicada la regla a este caso, robustece la resolución de la Comisión Industrial cuya revisión se pide porque no puede sostenerse que el encargo de recoger la correspondencia fuera el que creara la necesidad del viaje y porque aunque por alguna circunstancia no se hubiera tenido que recoger dicha correspondencia, el viaje siempre se hubiera realizado. El motivo principal del mismo era la toma de alimentos, siendo incidental recoger la correspondencia.

Si el accidente hubiera ocurrido cuando los empleados una vez terminado su almuerzo se dirigían a cumplir el encargo,

la situación sería distinta. El accidente entonces hubiera podido considerarse cubierto por la ley tal como ésta ha sido interpretada por las cortes. En el caso de *Kahn Bros. Co. v. Industrial Commission,* 283 P. 1054, 75 Utah 145, la Corte Suprema de Utah resolvió que el accidente ocurrídole a un tenedor de libros que luego de tomar el almuerzo en su hogar iba directamente al correo, siguiendo la práctica cotidiana de buscar la correspondencia para su patrono, fué un accidente que surgió como consecuencia del empleo y en el curso del mismo. Mas no fué así y es necesario reconocer que la comisión estuvo justificada al resolver que no era procedente la indemnización por el Fondo del Seguro del Estado.

La dificultad en la resolución de casos de esta naturaleza estriba en que la tendencia natural es hacia la compensación. De ahí que el precepto de la ley se haya extendido a veces más allá de lo razonable con detrimento del Fondo del Estado que no fué calculado a base de tales riesgos.

Hemos examinado los casos resueltos por la propia Comisión Industrial de Puerto Rico que se invocan, a saber, el de Daniel A. Beaman y el de Alejandrina Álamo, reportados en el volumen primero de sus Decisiones, páginas 99 y 109, respectivamente, y aunque encontramos que tienen con éste puntos de contacto, no creemos que pueda estimarse que resuelven en sentido favorable a los recurrentes la cuestión fundamental aquí envuelta. Además, dichas decisiones no han pasado por la revisión de esta corte.

*Por virtud de todo lo expuesto debe declararse no haber lugar a la revisión solicitada.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.