JOAQUÍN GALLART MENDÍA, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., y CONCEPCIÓN PÉREZ PÉREZ e ISRAEL PLANELL GARCÍA, recurridos.

*Número:* CI-63-8      *Resuelto:* 16 de diciembre de 1963

582

*Donald R. Dexter, Miguel A. Guzmán Soto,* y *A. de Jesús Matos,* abogados del recurrente; *A. Viera Martínez,* y *Raúl Torres González,* abogados de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Debemos determinar en este caso si son compensables las lesiones sufridas por dos ejecutivos del Departamento del Trabajo en un accidente ocurrido en el área de estacionamiento de una bolera luego de asistir a una actividad que incluía baile, refrigerios y entremeses, auspiciada por la Liga de Bolos de los empleados de dicho departamento, celebrada con motivo de la entrega de trofeos a los equipos ganadores. Esta es la primera vez que consideramos esta cuestión.

La resolución de la Comisión Industrial concediendo a los interventores Planell y Pérez toda la protección de la ley de la cual recurrió ante nos el Administrador del Fondo del Seguro del Estado, se basó en la declaración de varios testigos y ciertos documentos admitidos como prueba. El Secretario del Trabajo, Sr. Frank Zorrilla, declaró que el Sr. Planell es el Subsecretario del Departamento del Trabajo, actúa en ausencia del Secretario, es su ayudante administrativo, y tiene facultades de supervisión, de dirección, y de control de trabajos del departamento; y el Sr. Concepción Pérez Pérez dirige la Oficina de Estudios sobre Desempleo Tecnológico. El primero tenía facultad para requerir los servicios y la comparecencia del segundo; que la Liga de Bolos, compuesta por empleados del Departamento es una actividad alentada por la Oficina de Personal del Gobierno de Puerto Rico y por el propio Departamento "pues conduce a una mayor amistad, acercamiento, entre todos los empleados y funcionarios del Departamento, lo que en sí conduce a un mejor clima para el trabajo mismo . . . ayudan al acercamiento y son útiles al mejor desempeño de las labores que tiene el Departamento del Trabajo asignado por la Legislatura"; que fue invitado para hacer la entrega de trofeos en un campeonato interdepartamental en una bolera en la noche del 21 de abril de 1961; que pidió a Planell asistiese e hiciese entrega de los trofeos en caso de que él (Zorrilla) no pudiese por sentirse enfermo; que de todos modos asistió y entregó los trofeos, acto

que terminó como a las 8:30 cuando se retiró por sentirse enfermo; que luego de la entrega de trofeos "quedaba la actividad con un acto social con música y baile quizás" ". . . es una actividad que tiene varias partes . . . porque era una sola actividad la de la entrega de trofeos y la actividad social que siguió . . ."; que desconocía qué participación específica tenían Planell o Pérez en esa actividad "fuera de la que siempre tenemos todos de estar atentos, el Secretario y todos los funcionarios, al mejor desarrollo de la actividad . . . a evitar incidentes que a veces ocurren, y mantener la mayor cordialidad y el mejor clima para que la actividad resultara en beneficio del mejor clima para todos los empleados"; que había unas 50 a 65 personas del Departamento en la actividad; que "El Dept. auspicia y alienta el que los empleados y funcionarios tengan su grupo recreativo"; que la actividad en cuestión la organizó la Liga de Bolos del Departamento en la Bolera Star en Río Piedras; que cuando se retiró no recuerda haber dado órdenes expresas a Planell o a Pérez ". . . recuerdo que estaba sin automóvil y el Sr. Concepción Pérez se ofreció llevarme a casa. Le respondí en la negativa . . . *Yo posiblemente le indiqué que le agradecía mucho, pero que él permaneciera con los compañeros.*" (Énfasis nuestro.); que después de la entrega de trofeos se hubiera podido celebrar la actividad sin Planell ni Pérez, pero que "en todas las actividades que participan empleados del Dept. que son hasta cierto punto alentadas por el Dept. y en una actividad que culminaba en esa actividad de entrega de trofeos y la parte social que va acompañada siempre es conveniente que haya funcionarios que tengan cierta ascendencia sobre los otros compañeros para evitar que ocurran cosas desagradables que ocurren frecuentemente en estas actividades"; que el Departamento no auspicia bailes, pero alienta que haya grupos recreativos; que no hay incompatibilidad en que haya una actividad deportiva que sea seguida por una actividad social. La testigo Sra. López Corbera explicó que la Liga de Bolos de empleados

del Departamento del Trabajo se organizó por sugestión del director de la Bolera, por medio de una reunión citada por los señores Planell y Colón González en la que estaba presente dicho director. Las reuniones de la Liga y su directiva se celebraban unas veces en el Departamento y otras en la Bolera, a veces en horas laborables. Concepción Pérez Pérez declaró que no recibió invitación de la Liga de Bolos para la referida actividad, sino que asistió respondiendo a una invitación del Secretario del Trabajo para que "le ayudase en la supervisión que corrientemente realizamos los distintos jefes del departamento a este tipo de actividades"; su participación en la actividad "fue ayudar a la supervisión y organización de la actividad"; que al terminarse la actividad a la 1:30 de la madrugada "nos requedamos el Sr. Planell y yo para ayudar a los oficiales que estaban a cargo de la actividad a hacer entrega del sitio"; que al caminar hacia sus respectivos automóviles ocurrió el accidente que le produjo las lesiones que explicó en su declaración; que no recibió orden expresa del Secretario del Trabajo o de Planell que tenía que estar pendiente del orden en la actividad estando en la Bolera; pero que antes había recibido dos llamadas de Planell para que estuviera presente en la actividad. Israel Planell testificó que la Liga de Bolos recibió la sanción del Departamento del Trabajo a los fines de su organización y se ha considerado como un organismo oficial por el Departamento que como parte del programa de la Oficina de Personal dicho Departamento estimula los deportes entre sus funcionarios, pues ayuda a desarrollar mejores condiciones de trabajo y comprensión entre sus empleados; inicialmente se usó tiempo oficial para la Liga; que ésta consulta su programa con el testigo, que permaneció en la parte recreativa de la actividad después de la entrega de trofeos y por último explicó cómo ocurrió el accidente; que es normal que tanto el Secretario del Trabajo como el testigo cuando asisten a tales actividades inviten a aquellos jefes de negociados y personas que los pueden ayudar

por su ascendencia sobre los demás empleados a que el acto tenga mayor éxito; que durante la actividad se habló de asuntos oficiales; que la parte recreativa es complementaria de la parte de deportes que auspicia la Oficina de Personal. En cuanto a si la parte recreativa es oficial contestó el testigo que la parte recreativa social siempre forma parte del programa de esa actividad; que si él se hubiera ausentado le hubiera encargado a alguno de los jefes de negociados que se quedara "con el mayor celo hasta terminar la actividad porque siempre tenemos gran preocupación de que cualquier gestión o actividad que lleva el nombre del Departamento sea terminada dentro del mayor orden." La declaración del último testigo, Sr. Altieri, no añadió hecho alguno a los que previamente se habían referido los testigos anteriores.

La Comisión Industrial en su resolución reseñó la prueba documental presentada en este caso, en la siguiente forma:

". . . (1) Memorándum del 23 de diciembre de 1954 del entonces Director de la Oficina de Personal, señor Ramón Torres Braschi, dirigido a los jefes de departamentos y agencias del Gobierno, en que insta a todas las oficinas del Gobierno a la organización de actividades recreativas mediante competencias deportivas en las que se cuentan todos los deportes, actos culturales, bailes y pasadías; (2) memorándum del 19 de febrero de 1960, dirigido a los oficiales de recreación de todos los departamentos, agencias e instrumentalidades públicas por el Sr. Antonio Cuevas Viret, Director de la Oficina de Personal, citándolos para una reunión que habría de celebrarse el martes 1 de marzo de 1960, a las 8:30 A.M. en el salón de Audiencias de la Junta de Personal para discutir la reanudación de actividades deportivas interdepartamentales con la organización de torneos para damas y para varones; (3) carta del 20 de julio de 1960, del Sr. Clegg, de la bolera Star, de Río Piedras, dirigida al Departamento del Trabajo ofreciendo los servicios de dicha bolera; (4) carta del 1ro. de agosto de 1960, del Sr. Alfredo Colón González, Ayudante Ejecutivo del Secretario del Trabajo, dirigida al Sr. Clegg concediéndole una entrevista para el 5 de agosto de 1960, para considerar el asunto del 'boleo'; (5) comunicación del 26 de septiembre de 1960, de la Asociación de Secretarias del

Departamento del Trabajo, dirigida al Sr. Alfredo Colón González, diciendo que de conformidad con el Sr. Israel Planell, lo citan para reunión el miércoles, 5 de octubre de 1960, a las 9:00 A. M., cuya reunión se celebró en la oficina del Sr. Planell; según documento admitido en la misma se tomó el acuerdo de organizar un 'team de bowling' de las Secretarias del Departamento del Trabajo; (6) carta del 18 de octubre de 1960, de la Asociación de Secretarias, dirigida al Ayudante del Comité que habría de entrevistarse con el Sr. Clegg en lo concerniente a la formación del equipo de bolos del departamento; (7) memorándum de la Asociación de Secretarias dando cuenta de la reunión del comité que se menciona anteriormente con el Sr. Clegg y citando para una reunión en la propia bolera; (8) Circular del 7 de noviembre de 1960 de la Directiva de la Liga de Bolos, anunciando que la bolera les ha ofrecido sus facilidades *una vez más libre de todo costo*; (9) Circular número dos, de 14 de noviembre de 1960, diciendo que en reunión del 10 de noviembre de 1960 quedó oficialmente organizada la Liga de Bolos del Departamento del Trabajo y que el primer torneo comenzaría el 17 de noviembre de 1960; (10) Carta circular número tres, de 10 de enero de 1961, dirigida a los miembros de la Liga de Bolos sobre la reanudación del torneo el 12 de enero de 1961; (11) Itinerario [sic] de juegos del equipo de boleo y programa invitación para la actividad del 21 de abril de 1961, en que se anuncia la entrega de trofeos por el Secretario del Trabajo, *baile* amenizado por dos conjuntos musicales y servicio de refrigerios y entremeses."

A base de esta prueba concluyó la Comisión que:

". . . En estas actividades, por su naturaleza, se hace necesario se mantenga la disciplina, ya que es menester quede limpio el nombre del Departamento que auspicia y alienta dicha actividad y es por esto que siempre es conveniente y prudente que esté presente uno o dos oficiales de mayor jerarquía para evitar que sucedan cosas desagradables. Esta era la razón principal de la presencia de los señores Planell y Pérez en dicho sitio."

Por el indicado fundamento concluyó la Comisión que el accidente ocurrido a Planell y a Pérez ocurrió en el curso y como consecuencia del trabajo y mientras realizaban una gestión inherente a éste y por tal virtud revocó la decisión

del Administrador del Fondo del Seguro del Estado denegándole compensación a dichos recurridos y ordenó que éste se sirva extenderles toda la protección de la ley. El Comisionado Sr. de Jesús Mangual, en un voto concurrente, añadió que entendía de la prueba que los interventores asistieron a la actividad en cuestión "a invitación y compelidos por las gestiones de su cargo".

El recurrente apunta como errores las conclusiones de la Comisión de (1) que al ocurrir el accidente Planell y Pérez se encontraban en funciones de su empleo; (2) que la actividad social en cuestión era auspiciada por el patrono y (3) que los casos de los interventores están protegidos por la ley vigente. Por estar íntimamente relacionados entre sí, discutiremos estos apuntamientos conjuntamente.

El Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 2)·, provee, en parte que:

"Las disposiciones de este Capítulo serán aplicables a todos los obreros y empleados que trabajen para los patronos a quienes se refiere el párrafo siguiente, que *sufran lesiones* o se inutilicen, o que pierdan la vida por *accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo. . . .*" (Énfasis nuestro.)

"Este Capítulo por ser de carácter remedial se interpretará liberalmente, y cualquier *duda razonable* que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado y la lesión, incapacidad o muerte, o el carácter ocupacional de una enfermedad, deberá resolverse a favor del obrero o empleado, o sus beneficiarios." (¹)

"Este Capítulo será aplicable a todo patrono que emplee uno (1) o más obreros o empleados comprendidos en el mismo, cualquiera que sea su salario. El Gobierno del Estado Libre Asociado y los diversos gobiernos municipales, juntas, comisiones, autori-

_____

(¹) Este párrafo sobre interpretación liberal fue añadido por la Ley Núm. 94 de 22 de junio de 1957. Esta enmienda estatuyó la anterior doctrina de este Tribunal al mismo efecto.

dades, instrumentalidades, corporaciones, públicas y agencias del Estado Libre Asociado, se considerarán como patrono y como tales serán comprendidas dentro de las disposiciones de este Capítulo en cuanto a los obreros, empleados y *funcionarios* que utilicen. . . ." (Énfasis nuestro.)

■ El Art. 11 de dicha ley (11 L.P.R.A. sec. 12), provee que la revisión de las decisiones de la Comisión Industrial solamente podrá concederse sobre cuestiones de derecho o apreciación de prueba cuando ésta sea de carácter pericial. En el caso que nos ocupa, la cuestión envuelve una determinación sobre si el accidente que ocasionó las lesiones cae dentro de las disposiciones del referido Art. 2. Es, en última instancia, una determinación de hecho y de derecho y por consiguiente es revisable como una cuestión de derecho.

■ Según nuestro dictamen en *Montaner, Admor.* v. *Comisión Industrial*, 53 D.P.R. 197, 199 (1938), los tres requisitos prescritos por el Art. 2 previamente relacionados deben concurrir para que un accidente sea compensable, pero como más tarde dijimos en *Candelaria* v. *Comisión Industrial*, 85 D.P.R. 20 (1962), los requisitos de que el accidente " (1) provenga de cualquier acto o función; (2) inherente a su trabajo o empleo; (3) y que ocurra en el curso de éste fueron objeto en el pasado de sutiles interpretaciones que lograron inmovilizar el ánimo reparador de la nueva institución. Casi todas las teorías que rigieron, y aún rigen, las compensaciones por negligencia civil le fueron aplicadas a este tipo de compensación especial que, sin duda alguna, no participa de la naturaleza de una acción civil por negligencia. Felizmente, la jurisprudencia moderna ha ido corrigiendo este enfoque erróneo y liberalizando las normas que se desarrollaron en torno a los tres conceptos clásicos, creando una relación causal con el acto del trabajo que permita una más ancha aplicación del seguro social implícito que tipifica la compensación por riesgo obrero. Como un indicio claro de nuestra propia actitud ante el problema, véase: *Cordero, Admor.* v. *Comisión In-*

*dustrial,* 61 D.P.R. 361 (Del Toro) (1943), cita precisa a las págs. 365–367." *Gallart Mendía* v. *Comisión Industrial,* 87 D.P.R. 17 (1962). Cf. *Torres Rivera* v. *Comisión Industrial,* 85 D.P.R. 620 (1962); *Vda. de Meléndez* v. *Comisión Industrial,* 85 D.P.R. 58, (1962); *Atiles Moreu, Admor.* v. *Comisión Industrial,* 85 D.P.R. 25 (1962); *Feliciano Figueroa* v. *Comisión Industrial,* 84 D.P.R. 196 (1961); *In re: Employees' Liability Assur. Corporation* (McNicol's Case), 102 N.E. 697 (Mass. 1913). Véase Nota de David G. Budd, titulada *"Injury . . . Received in the Course of, and Arising Out of, The Injured Employees Employment",* 30 U. Cinc. L. Rev. 498 (1961).

Como el Administrador del Fondo del Seguro del Estado, administrativamente ha extendido la protección de la referida ley a los accidentes ocurridos a empleados públicos que participan activamente en competencias deportivas interagenciales, pero no a los espectadores, nos limitaremos a considerar si se justifica en derecho extender el palio protector de dicha ley a estos últimos en actos recreativos como el celebrado en este caso y, más específicamente, a los accidentes sufridos por ejecutivos de un departamento gubernamental que asisten a tal acto con el objeto de "evitar incidentes . . . y asimismo mantener la armonía y cordialidad entre los allí concurrentes . . .". La Comisión concluyó "que la presencia de los Sres. Planell y Concepción en esta actividad auspiciada por el Dept. del Trabajo era en beneficio del patrono . . . y tenía la aceptación, consentimiento y beneplácito del jefe supremo de dicho Departamento, el Secretario del Trabajo, Sr. Frank Zorrilla."

El conocido tratadista William R. Schneider, resume la regla aplicable a casos como éste, en la siguiente forma:

"Generalmente, las lesiones sufridas por un empleado mientras observa, participa en, o va o regresa de, actividades recreativas auspiciadas en todo o en parte por el patrono, no son compensables debido a que se sufren tales lesiones usualmente

cuando el empleado no está desempeñando una obligación para la cual ha sido empleado expresa o implícitamente. En otras palabras, no puede corrientemente decirse que las lesiones resultaron de un accidente que ocurrió como consecuencia y en el curso del empleo.

"Se hace una distinción, sin embargo, en aquellos casos en que el acto recreativo que ocasionó la lesión, bien directa o indirectamente, era auspiciado por el patrono como una cuestión de negocios y no por motivos altruístas. Esto es, el patrono ejerce control o dominio sobre la actividad recreativa con el fin de desarrollar mejor servicio y eficiencia entre los empleados, obteniendo así un beneficio directo para su negocio de la actividad recreativa que auspicia." 6 Schneider's *Workmen's Compensation,* pág. 519.

■ Al considerar la compensabilidad de lesiones sufridas durante actividades recreativas, las cortes han establecido un número de criterios para determinar si el empleo y la recreación están relacionados tan íntimamente como para justificar compensación. En *Moore's Case,* 110 N.E.2d 764, 766, 767 (Mass. 1953), la corte los enumera en la siguiente forma:

"1) La naturaleza habitual de la actividad.

"2) La promoción o la provisión de fondos por el patrono para la celebración de la actividad.

"3) El grado hasta que el patrono administró o dirigió la actividad recreativa.

"4) El ejercicio de presión sustancial o compulsión efectiva sobre el empleado para asistir o participar.

"5) El hecho que el patrono espera recibir o recibe un beneficio de la participación del empleado en la actividad, bien mediante el mejoramiento.de las relaciones obrero-patronales; mayor eficiencia en el cumplimiento de los deberes del empleado; la utilización de la recreación como compensación parcial o recompensa adicional por su trabajo o como anuncio del negocio del patrono o como un aditamento de su negocio."

La presencia o ausencia de cualquiera de los factores enumerados no resuelve la cuestión. Lo que se requiere en cada caso es una evaluación del significado de cada factor existente en relación con. la totalidad de la actividad. De

esa evaluación depende, en última instancia, la decisión con respecto a la proximidad de la relación entre el empleo y la actividad recreativa. Véase Nota titulada *Workmen's Compensation—Recovery for Recreational Injuries*, 25 N.Y.U.L. Rev. 149 (1950).

En *Adela Landry's Case*, 190 N.E.2d 208 (Mass. 1963), la misma corte tuvo oportunidad de aplicar la doctrina expuesta en *Moore's Case*, supra, resolviendo que la lesión sufrida por la empleada mientras bailaba en una fiesta de Navidad ofrecida por el patrono a sus empleados en un hotel, siendo la asistencia a la misma opcional, no ocurrió en el curso y como consecuencia del empleo. Se negó la compensación.

En *Wilson* v. *General Motors Corporation*, 84 N.E.2d 781 (N.Y. 1949), se resolvió que las lesiones sufridas por un empleado en una competencia deportiva, que no era una actividad de su empleo, que tuvo lugar lejos del lugar del trabajo y cuyo riesgo no estaba ni controlado ni impuesto por el patrono, no era compensable, no obstante que éste proveía alguna ayuda financiera para tal actividad, añadiéndose que *"Es demasiado tenue y efímera la posibilidad de que tal participación pudiera quizás indirectamente beneficiar al patrono al mejorar la moral del empleado y en promover buenas relaciones entre los empleados."* (Énfasis nuestro.)

En *Stout* v. *Sterling Aluminum Products Co.*, 213 S.W.2d 244 (Mo. 1948), se dijo que los beneficios especulativos o intangibles que el patrono podría obtener con la creación de buena voluntad entre el patrono y los empleados de por sí no era suficiente para reconocer la existencia de la relación de patrono y empleado al ocurrirle la lesión al empleado en una jira auspiciada por el patrono en relación con la cual éste escogió el sitio y proveyó la comida, la bebida y paseos en distintos artefactos en un parque recreativo. Véase Larson's *Workmen's Compensation Law*, vol. 1, pág. 328, sec. 22; la Nota titulada *Recreational Injuries & Workmen's Compensa-*

*tion*: *Infusion of Common-Law, Agency—Tort Concepts*, 34 Ind. L.J. 310 (1959); 41 Neb. L. Rev. págs. 29, 30 y 31 (1961); y la Nota titulada *Workmen's Compensation— Recovery Allowed for Death of 24 Hour Employee in a Semi Isolated Area Incurred During a Basically Recreational Activity*, 34 Rocky Mt. L. Rev. 273 (1962); 23 N.A.C.C.A. L.J. 147 (1959).

En *F. Becker Asphaltum R. Co.* v. *Industrial Commission* 164 N.E. 668 (Ill. 1928), se resolvió que una jira que el patrono acostumbraba ofrecer a sus empleados con el propósito de crear buenas relaciones entre ellos, mejorar su disposición y ayudar al negocio, no estaba relacionada con el propósito para el cual el lesionado fue empleado y por lo tanto las lesiones sufridas por dicho empleado al dirigirse a dicha actividad no eran compensables.

■ Un análisis de los casos más conocidos en que se concedió compensación por lesiones sufridas por un empleado en una actividad recreativa demuestra que en dichos casos han concurrido alguna o varias de las siguientes circunstancias:

1) El patrono organizó la actividad y sufragó parte o todo el costo de la misma,

2) El accidente ocurrió dentro del área del trabajo regular del patrono,

3) Se trataba de una empresa comercial (ventas, etc.) a la que puede imputársele un beneficio directo por el feliz desenvolvimiento de la actividad,

4) El accidente ocurrió durante horas laborables, o bastante cerca, del comienzo o terminación de la faena diaria,

5) El patrono indujo efectivamente a los empleados a participar en la actividad por medio de un ofrecimiento de salario por las horas en que ésta se celebraba,

6) El patrono seleccionó el lugar en que se celebró la actividad, siendo por lo tanto responsable por la peligrosidad del sitio escogido,

7) El patrono proveyó transportación hacia y desde el lugar de la actividad,

8) La actividad en sí equivalía a cierta forma de compensación por parte del patrono a sus empleados,

9) La costumbre de celebrar tal actividad estaba tan arraigada como tradición en el empleo que constituye parte del mismo para los empleados,

10) El patrono aprovechó la oportunidad para dirigirse, a los empleados por medio de discursos exhortándolos hacia un mayor rendimiento obrero,

11) Se trataba de una jurisdicción en donde el estatuto dispone expresamente que en toda reclamación de esta índole el empleado estará amparado por la presunción a su favor de que el accidente es compensable hasta que se demuestre lo contrario,

12) Los reclamantes eran participantes en la actividad o deporte que se llevó a cabo.

*O'Leary* v. *Brown, Pacific Maxon*, 340 U.S. 504 (1951); *Torres* v. *Triangle Handbag Mfg. Co.*, 211 N.Y.S.2d 992 (N.Y. 1961); *Noble* v. *Zimmerman*, 146 N.E.2d 828 (Ind. 1957); (²) *Game & Fish Department* v. *Pardoe*, 363 P.2d 1067 (Col. 1961) *Graves* v. *Central Electric Power Cooperative*, 306 S.W.2d 500 (Mo. 1957); *Wiseman* v. *Industrial Accident Commission*, 297 P.2d 649 (Cal. 1956); *Turner* v. *Willard*, 154 F.Supp. 352 (1956); *Fagen* v. *Albany Evening Union Co.*, 24 N.Y.S.2d 779 (N.Y. 1941); *Tedesco* v. *General Electric Co.*, 114 N.E.2d 33 (N.Y. 1953); *Kelly* v. *Hackensack Water Co.*, 77 A.2d 467 (N.J. 1950); *Ott* v. *Industrial Commission*, 82 N.E.2d 137 (Ohio 1948); *Linderman* v.

---

(²) Se aplicó en el caso de *Noble*, supra, la doctrina de *O'Leary*, supra, en que se concedió compensación por la muerte de un empleado que se ahogó mientras trataba de rescatar a dos personas en un canal junto a un área recreativa en Guam, provista por el patrono que construía una obra allí. El fundamento aducido en este caso para la compensación fue que las condiciones u obligaciones del empleo crearon una zona de peligro especial de la cual surgió el peligro. Véase la opinión disidente en el caso de *Noble*.

*Cownie Furs*, 13 N.W.2d 677 (Iowa 1944); *Kenny* v. *Lord & Taylor, Inc.*, 173 N.E. 853 (N.Y. 1930).

La Comisión Industrial no citó jurisprudencia específica alguna en apoyo de su conclusión en este caso. El Comisionado de Jesús Mangual sí lo hizo en su voto concurrente, señalando los criterios o factores previamente enumerados que deben tomarse en consideración en casos como el que nos ocupa. En apoyo de su conclusión de que el riesgo al cual el Departamento del Trabajo, el patrono en este caso, expuso a Planell y a Pérez es razonablemente incidental a su empleo, cita los casos de *Graves*, supra, y *Turner*, supra, y el de *Bacó* v. *Comisión Industrial*, 52 D.P.R. 866 (1938). Los dictámenes en estos casos no justifican ni sostienen la conclusión del Comisionado de Jesús Mangual. En *Graves*, supra, el accidente ocurrió mientras el empleado asistía a una jira que el patrono ofrecía anualmente a sus empleados y a la cual su superior insistió en que asistiese mientras que al mismo tiempo atendía funciones de su cargo manteniéndose en contacto con una planta eléctrica del patrono mediante un radio. Se concedió compensación por la muerte del empleado. La corte sostuvo que el accidente que dio lugar a que el empleado se ahogara surgió de las condiciones del empleo y esta condición era previsible. Contrario al caso que nos ocupa, en éste el *patrono* proveyó la actividad que ya era una práctica y una costumbre en el empleo y escogió el lugar donde se celebraba la misma.

En *Turner*, supra, el accidente que lesionó al empleado ocurrió mientras éste, en horas de, y dentro del área de trabajo, se dirigía en un jeep a conferenciar con otro empleado con respecto a la Liga de Bolos organizada por el *patrono* para fines de recreación de los empleados. El empleado lesionado era capitán de equipo en dicha liga y el otro era el presidente de la Liga. Al conceder compensación, la corte señaló que al ocurrir el accidente el empleado se dirigía en horas de trabajo y en un vehículo del patrono a tratar un

proyecto que era tan parte del empleo regular como si estuviera relacionado con la construcción misma. La diferencia notable entre este caso y el que venimos considerando es que en *Turner*, el accidente ocurrió en el lugar del empleo, en horas de trabajo, mientras el empleado conducía un vehículo del patrono y se trataba de un deporte en que el empleado era participante. En *Bacó*, supra, se negó compensación por el accidente sufrido por un empleado mientras se dirigía de la oficina a un automóvil con el objeto de ir a almorzar a su casa y luego recoger la correspondencia del patrono y llevársela. Se negó la compensación en este caso porque "no pudo sostenerse que el encargo de recoger la correspondencia fuera el que creara la necesidad del viaje y porque aunque por alguna circunstancia no se hubiera tenido que recoger dicha correspondencia, el viaje siempre se hubiera realizado. El motivo principal del mismo era la toma de alimentos, siendo incidental recoger la correspondencia." Claramente este caso no es aplicable.

■ En el caso ante nos, el Departamento del Trabajo, ni escogió el lugar para la fiesta fuera del área de trabajo regular de dicho patrono, ni la ofreció, ni sufragó los gastos de ésta, ni requirió la presencia de Planell y Pérez en la misma en funciones de sus respectivos cargos. A lo sumo se requirió la asistencia de Planell a la entrega de trofeos y éste a su vez requirió la de Pérez a dicha actividad. Pero al asistir personalmente y luego retirarse del acto, el Secretario del Trabajo no requirió de Pérez que permaneciera con sus compañeros como dijo la Comisión en su resolución, sino que agradecía la oferta de Pérez de llevarle a su casa "pero que él permaneciera con los compañeros", es decir, que se quedara en la fiesta disfrutando de la misma con los demás. Tampoco aparece de la prueba que la fiesta en cuestión se llevase a cabo durante horas laborables, ni que fuese una práctica o costumbre en el Departamento del Trabajo, ni que fuese controlada o

dirigida por dicho departmento; al contrario, fue auspiciada, organizada, costeada, programada y dirigida por los empleados mismos. No se ha comprobado en este caso la existencia de ninguno de los factores o criterios expuestos en *Moore's Case,* supra, que justificarían la concesión de compensación en situaciones similares. Tampoco aparece de la prueba que concurriera alguna de las circunstancias bajo las cuales se concedió compensación en los casos previamente citados.

Admitiendo que la fiesta en cuestión conduce, como declaró el Secretario del Trabajo, "a una mayor amistad, acercamiento entre todos los empleados y funcionarios del Departamento lo que en sí también conduce a un mejor clima para el trabajo mismo . . .", la posibilidad de que la participación de Planell y Pérez en dicha actividad pudiera quizás indirectamente beneficiar al patrono "es tenue y efímera", como se dijo en *Wilson,* supra, y se confirmó en otras palabras en *Stout,* supra, y *F. Becker Asphaltum R. Co.,* supra. Dada la naturaleza de la festividad que se llevó a cabo por los empleados en el lugar y forma y manera que ellos mismos escogieron, el hecho que Planell y Pérez se impusieran a sí mismos como ejecutivos del Departamento del Trabajo, la obligación de mantener el orden en la misma con el fin de evitar incidentes desagradables que desvirtuasen su propósito, no puede en forma alguna justificar la conclusión que tales actuaciones de su parte estaban tan estrecha e íntimamente relacionadas con las funciones de sus respectivos cargos, tenían una relación causal tan próxima a éstos, que el accidente que ocasionó sus lesiones provino de un acto o función inherente a su trabajo y que ocurrió en el curso de éste y como consecuencia del mismo.

*Se revocará la resolución dictada por la Comisión Industrial, en 21 de noviembre de 1962.*

El Juez Presidente Señor Negrón Fernández disintió.