Sucesión de Ángel Pérez Puerta, recurrente, *v.* Comisión Industrial de Puerto Rico, etc., demandada.

*Número:* CI-66-19        *Resuelto:* 19 de mayo de 1967

*Hipólito Marcano,* abogado del recurrido; *Donald R. Dexter, Milagros Muñiz Bou, Gilberto Cobián Aparicio y Jorge Már-*

*quez Gómez,* abogados del Administrador del Fondo del Seguro del Estado.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Por estimar que la muerte del Teniente Ángel M. Pérez Puerta se debió a causas ajenas a las funciones de su empleo, la Comisión Industrial confirmó la decisión del Administrador del Fondo del Seguro del Estado que le negó compensación a sus dependientes. La determinación final depende de la aplicación de la regla sobre dualidad de propósitos en viajes emprendidos por los empleados. En *Bacó* v. *Comisión Industrial,* 52 D.P.R. 866 (1938),[1] adoptamos para estas situaciones la fórmula elaborada por el Juez Cardozo en *Matter of Marks* v. *Gray,* 167 N.E. 181 (N.Y. 1929),[2] que se expone así:

"Si el trabajo a realizarse por el empleado crea la necesidad del viaje, se sostendrá que se encuentra en el curso del empleo, aunque lo aproveche para hacer algunas gestiones personales . . . . Sin embargo, si el trabajo no ha sido un factor en crear la necesidad del viaje, si el viaje se hubiese efectuado aunque se hubiera suprimido la gestión del empleo, o se hubiera

[1] Envolvía la modalidad más frecuente de la aplicación de la regla de dualidad de propósitos. Resolvimos que no era compensable un accidente ocurrido a empleados de un patrono que habían salido de la oficina en que regularmente trabajaban para dirigirse a sus hogares a almorzar por el hecho de que tuvieran el encargo de recoger correspondencia que el patrono tuviera en su oficina del pueblo para entregársela en su oficina del campo.

[2] Esta fórmula ha subsistido en la mayoría de las jurisdicciones a pesar de que aun en el propio estado de Nueva York se han hecho expresiones de que no prevalece. En Larson, *Workmen's Compensation Law,* vol. 1, § 18.22, se discuten y distinguen las situaciones, y se concluye que la sobrevivencia de la regla se debe a que nadie ha podido elaborar una más precisa. 5 NACCA L.J. 64 (1950).

cancelado al desaparecer los motivos personales aunque la gestión del empleo no se hiciera, el viaje debe reputarse de carácter personal, y el riesgo ajeno al empleo."

Como acontece frecuentemente es más fácil exponer la regla que aplicarla. Depende decisivamente de las circunstancias que concurran en cada caso específico, y, sobre todo, de la significación que se le atribuya a cada una de dichas circunstancias.

Los hechos que consideró probados la Comisión Industrial, copiados de la extensa resolución que emitió, son los siguientes:

"La prueba que desfiló en este caso dejó comprobado que para la fecha en que ocurrió el accidente en que muriera el obrero Ángel M. Pérez Puerta, éste ocupaba el cargo de Teniente de la Policía Estatal en el distrito policíaco de Utuado. Que estudiaba el Curso de Derecho en la Universidad Interamericana en Hato Rey, Puerto Rico. El día del accidente el obrero occiso llegó al Cuartel de la Policía a las 8:30 de la mañana.

Ese mismo día fue encontrado en Utuado un artefacto explosivo de los conocidos como bomba Molotov. El hallazgo del artefacto fue notificado por Pérez Puerta al Comandante de Arecibo, Sr. Emilio Hernández Soto y a los químicos de la Policía en San Juan. El Comandante Hernández Soto también notificó el hallazgo del artefacto a la Superintendencia de la Policía en San Juan y al Sargento Carmelo Méndez de Arecibo, especialista examinador de estos tipos de artefactos. En horas del mediodía, entre 11:00 y 12:00, el artefacto explosivo fue puesto en hielo como un medio de protección, por orden del Sargento Méndez.

En el Cuartel de la Policía de Utuado trabajaban ese día en labores de oficina los policías Miguel Requena Maldonado, Juan A. Beltrán, Jorge Torres Bauzá y Heredia, cuatro policías. A cargo de la fuerza policíaca en Utuado junto con el Teniente Pérez Puerta, estaba el Sargento Luis M. Álvarez. Ese día con motivo del hallazgo del artefacto explosivo estuvo en el Cuartel el Sargento Víctor M. Acosta, quien disfrutaba de vacaciones, y otros miembros del cuerpo policíaco. Aunque la Superintendencia de la Policía fue informada del hallazgo del artefacto

explosivo, los técnicos químicos de la Superintendencia de Policía no estuvieron en Utuado. Solamente estuvo el Sargento Carmelo Méndez, especialista en este tipo de artefacto, quien ordenó que el artefacto fuese puesto en hielo.

El occiso Teniente Pérez Puerta el día del accidente atendió sus funciones en el Cuartel de Utuado, firmó documentos, informes, y atendió el asunto relacionado con el artefacto explosivo. Como de 3:30 a 4:00 de la tarde abandonó el Cuartel de la Policía de Utuado, diciéndole al policía Miguel Requena Maldonado al marcharse 'que se iba y si al otro día llegaba un poco tarde se debía a que tenía que ir a una reunión de oficiales en la Comandancia.' El Teniente Pérez Puerta vivía en el pueblo de Hatillo. Ese mismo día como a las 8:00 de la noche, más o menos, murió en un accidente automovilístico en la carretera estatal Núm. 2 en la jurisdicción del pueblo de Dorado, en ocasión en que iba hacia San Juan. Hubo una diferencia de cuatro (4) horas entre la salida del obrero occiso del Cuartel de Utuado y su muerte.

El Sargento Víctor M. Acosta en el curso de su declaración dijo que el Teniente Pérez Puerta ese día del accidente iba para Río Piedras a estudiar y le había dado instrucciones para que se hiciera cargo del artefacto explosivo, mientras él iba a diligenciar que vinieran los técnicos del Cuartel General.

Se le preguntó al Comandante Hernández Soto si en ocasiones anteriores en que se ocuparon explosivos en Utuado, el Teniente Pérez Puerta había ido a buscar técnicos a las oficinas generales en San Juan, y éste contestó 'que no porque tenían buen sistema de comunicaciones.' El artefacto explosivo estuvo dos o tres días bajo observación y nunca vinieron los técnicos químicos del Cuartel General de San Juan. Aparentemente no le dieron gran importancia al susodicho artefacto explosivo.

El Teniente Pérez Puerta era estudiante de Derecho de la Universidad Interamericana de Hato Rey. El día en que ocurrió el accidente venía a estudiar a dicha Universidad. Había informado que iba a llegar al Cuartel General de la Policía en Hato Rey para solicitar que enviaran los químicos que tiene esta Agencia para examinar el artefacto explosivo que fue encontrado en Utuado. El obrero no llegó a realizar ninguna de las dos encomiendas, ya que murió en el camino hacia San Juan."

En el análisis de los hechos probados para llegar a la conclusión de que el accidente no era compensable, dijo:

"En el caso ante nos, el obrero Ángel M. Pérez Puerta iba la noche del accidente para la Universidad Interamericana en Hato Rey a estudiar e iba a aprovechar el viaje para solicitar del Cuartel General de la Policía el envío de químicos para que examinaran el artefacto explosivo que ya tenían puesto en hielo. El viaje lo hizo el obrero occiso por la noche. Por la noche era que él estudiaba su curso de Leyes en la Universidad Interamericana en Hato Rey. Después de ocurrida la muerte del Teniente Pérez Puerta, ningún otro funcionario vino a San Juan a gestionar el envío de químicos al Cuartel de Utuado. Los químicos nunca fueron a examinar dicho artefacto. Ese hecho comprueba que no era de importancia el viaje del Teniente Pérez al Cuartel General de la Policía en San Juan. El viaje del obrero Ángel M. Pérez Puerta a San Juan, lo motivó principalmente la necesidad de asistir a sus estudios en la Universidad Interamericana. De no haber tenido el occiso que venir a estudiar esa noche del accidente, el viaje no se hubiese hecho. No era necesario el viaje, toda vez que la Superintendencia de la Policía tenía conocimiento de los hechos. Tanto el Teniente Pérez Puerta como el Comandante del Area, señor Hernández Soto, habían notificado al Cuartel General en San Juan."

Larson, *Workmen's Compensation Law*, vol. 1, § 18.12, expone la regla que impera en la gran mayoría de la jurisprudencia, en las siguientes palabras:

"Cuando un viaje comprende tanto gestiones personales como del empleo, se considerará personal si se hubiese realizado a pesar de que se desistiera de o abandonara la gestión del empleo y no se hubiera realizado al desistirse de la gestión particular, aunque consiguientemente la relacionada con el empleo no se llevara a cabo; se considerará como del empleo si el viaje se hubiera realizado a pesar de que se desistiera de o abandonara la gestión personal, porque el servicio a ser prestado por el empleado hubiese requerido el viaje de alguna persona aunque ello no hubiera coincidido con el viaje personal del empleado."

La Comisión Industrial, al aplicar la regla, esbozó que "La cuestión importante a resolver es cuál de las dos gestiones que el obrero iba a realizar era la más importante. Si el asisitir a su clase de Derecho en la Universidad Interamericana esa noche o visitar el Cuartel General para requerir el envío de los técnicos químicos a Utuado." Este enfoque, que incorpora la interpretación del propósito principal o dominante del viaje, derivado de la opinión en *Bacó*, supra, (³) no es favorecido. Como dice Larson, *op. cit.*, § 18.13, el Juez Cardozo no alude al propósito principal del viaje; se refería a que la gestión relacionada con el empleo fuera una causa concurrente del viaje, y agrega: "Debe enfatizarse un detalle para completar la regla: no es necesario que, en ausencia del propósito particular, la gestión relacionada con el empleo se hubiere llevado a cabo por este empleado en particular en este momento específico. Es suficiente que alguna persona hubiese tenido que realizar el viaje para la gestión conectada con el empleo. Quizás otro empleado lo hubiera hecho; quizás se hubiese seleccionado otra ocasión; pero si un viaje especial hubiese sido requerido para este propósito y el empleado hubiese realizado la gestión en el curso de su viaje personal, se considera como una causa concurrente del viaje . . . ". Véase, Schneider, *Workmen's Compensation Text*, vol. 7, cap. 31.

No es necesario, por tanto, pesar cuál de los dos motivos del viaje era principal. Sólo es procedente determinar si se precisaba la gestión relacionada con el negocio, bien por ese mismo empleado u otro, bien el día en que ocurrió el accidente u otro. Presume que aun cuando el propósito relacionado con el empleo pueda ser insuficiente era lo suficientemente urgente para justificar la necesidad del viaje. Véanse

---

(³) Dijimos, a la pág. 872: ". . . [A]unque por alguna circunstancia no se hubiera tenido que recoger dicha correspondencia, el viaje siempre se hubiera realizado. *El motivo principal del mismo* era la toma de alimentos, siendo incidental recoger la correspondencia".

los casos ilustrativos citados en Larson, *op. cit.*, 18.14. La mejor caracterización de la regla sería no la de dualidad de propósitos, sino la de concurrencia de propósitos. *Levine* v. *Builders Aluminum Stone Co.*, 186 So.2d 26 (Fla. 1966).

■ Aun aplicando este criterio menos restrictivo no es posible sostener que el accidente ocurrido en el cual perdió la vida el causante de los recurrentes sea compensable. De la relación de hechos que antecede aparece que la gestión que pretendió emprender el Teniente Pérez Puerta no era necesaria ya que se había seguido el procedimiento usual y corriente en los casos de hallazgos de explosivos. Las autoridades superiores habían sido notificadas, tanto la comandancia del área como la general, los técnicos habían sido avisados, y, mediante la intervención del Sargento Méndez, se tomó la medida inmediata de precaución que la situación requería. Abona a esta conclusión el hecho de que posteriormente los técnicos del Cuartel General no visitaron el pueblo de Utuado en gestiones relacionadas con la bomba "Molotov" encontrada. Tampoco se acostumbraba hacer gestiones personales para el envío de los técnicos, pues como testimonió el Comandante Hernández Soto, el buen sistema de comunicaciones de que está actualmente dotada la Policía Estatal era suficiente. En resumen, el motivo relacionado con el empleo no hubiera requerido el viaje ni en el momento en que tuvo lugar ni en ningún otro momento, ni por el Teniente Pérez Puerta ni por ningún otro oficial o agente policíaco.

*Se confirmará la resolución dictada por la Comisión Industrial en 28 de julio de 1966.*