MARY O. WEAVER, Appellant, v. NORWICH PHARMACAL COMPANY, and UTICA MUTUAL INSURANCE COMPANY.—149 S. W. (2d) 846.

Division One, April 18, 1941.

*William R. Schneider* and *Frank E. Atwood* for appellant.

*A. A. Alexander* and *Albert Miller* for respondents.

BRADLEY, C.—This is a compensation case in which $18,276 is the amount claimed. The commission denied compensation. The circuit court (St. Louis County) affirmed the finding of the commission and claimant appealed.

Claimant is the widow of Samuel J. Weaver, deceased employee; the Norwich Pharmacal Company was the employer, and the Utica Mutual Insurance Company the insurer. The principal defense is that the accident resulting in the employee's death did not arise out of and in the course of his employment.

The accident occurred November 27, 1934, and claim was filed January 15, 1935, but the commission declined to take jurisdiction because the contract of the deceased employee, with the employer, was made in Illinois. However, claimant was successful in mandamus to compel the commission to proceed. [See State ex rel. Weaver v. Missouri Workmen's Compensation Commission et al., 339 Mo. 150, 95 S. W. (2d) 641.]

Deceased was a traveling salesman, and he and his family, consisting of the wife and two small children, resided in Richmond Heights, St. Louis County. His territory included St. Louis and St. Louis County. November 27, 1934, he had lunch at the City Hall Drug Store, 200 N. 12th Street, St. Louis, and about 2:45 P. M., in Richmond Heights, he picked up Mrs. X, a neighbor and family friend. They drove west to Hanley Road, and then north to Olive Street Road, an improved highway, and then west on Olive Street Road to Creve Couer where deceased called on a druggist and got an order. They then continued west on Olive Street Road to Wild Horse Creek Road, also an improved highway, which ran from Olive Street Road some-

what to the southwest, then south and east to Manchester Road, making a kind of a loop from Olive Street Road to Manchester Road. Babler Park is at the west end of the loop, near the Franklin County line. Deceased and Mrs. X followed the Wild Horse Creek Road for 3 or 4 miles to a private road called the Green Hill farm road, which had some gravel and which extended generally west from the Wild Horse Creek Road. They drove on the Green Hill farm road for about a mile and then turned left onto a private one lane dirt road for two or three hundred yards. At this point deceased, between 4 and 5 o'clock, backed his car a short distance off the road to the left. The Green Hill farm road terminated at a point about one-half mile beyond the one lane dirt road, and the latter terminated at the William Parks place, a house in ten acres of brush, about 200 yards beyond the point where deceased stopped.

Mrs. X testified that after deceased backed his car off the road, he arranged some advertising matter and merchandise in the rear seat and that they discussed whether they "were lost or not;" that it was a cloudy day and was getting dark; that they remained at the roadside not "more than ten minutes;" that "it began to rain very hard;" that they started down the hill and the car skidded and struck a tree. This point was about 100 yards from the Green Hill farm road.

When the car struck the tree both were injured; Weaver fatally as it turned out. Mrs. X was thrown forward and her nose and several teeth broken and she was bruised and dazed. Deceased got out and went away to find help, but never returned. His body was found next day in a field about a half mile away. The autopsy gave the cause of death as "pulmonary congestion, pulmonary contusion with congestion; exposure and shock."

Mrs. X remained in the car till about 7 o'clock, at which time William Parks and his son, Orville, with Orville driving, came up on their return home. They had driven away from home and passed by the Weaver car while it was standing off the road. The Weaver car, dimmers on, blocked the road. William Parks got out; saw the situation; had some conversation with Mrs. X; walked up to his house, got an axe and cut the brush so his car could pass. He and his son, in the Parks car, took Mrs. X home.

Next morning Parks and his son were at the place where the Weaver car was parked. William Parks testified that they found there a pint whiskey bottle, which "looked like there had been some pretty good whiskey in it;" that it had about "a teaspoon of whiskey in it. Q. Describe the appearance of the bottle as to age of this bottle; as to its newness? A. Why, it looked like somebody just drank out of it and threw it down there." Also, he said that they found "a rubber that they use sometimes . . . right by the side of where it (the car) stood. It looked like it had been used pretty recently." Orville Parks testified to the same effect as did his father. There are other circumstances not necessary to state.

Mrs. X testified to the effect that when she and deceased left Creve Couer, the purpose of the deceased was to get over to Manchester Road in order to call at a drug store in an endeavor to get an order and that he got confused as to roads and got on the Green Hill farm road and the one lane dirt road by mistake; that they had no whiskey and that nothing improper occurred.

"Findings of fact made by the commission, if sustained by sufficient competent evidence, are, absent fraud, conclusive on appeal, and in determining the sufficiency of the evidence upon which the commission based its finding we consider the evidence in the light most favorable to the finding and disregard evidence which might support a different finding than made." [Adams v. Continental Life Ins. Co. et al., 340 Mo. 417, 101 S. W. (2d) 75, l. c. 77, and authorities there cited.]

"When an employee abandons or steps aside from his employment and duties connected therewith and engages in work or pleasure purely his own, and while so engaged receives accidental injuries, his employer is not liable because the accident does not arise out of and in the course of the employee's employment." [Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S. W. (2d) 441, l. c. 443, 100 A. L. R. 1044; O'Dell v. Lost Trail, Inc., 339 Mo. 1108, 100 S. W. (2d) 289, l. c. 292.]

Even though an employee deviates from his employment for pleasures of his own, yet if he resumes his employment and is thereafter injured while pursuing such resumed employment, the accident is one arising out of and in the course of his employment. [Beem case, supra, 337 Mo. 114, 85 S. W. (2d) l. c. 444.]

The effect of the finding of the commission is that the employee, Weaver, deviated from his employment and that he had not reached a point, at the time of the accident, where his employment could be said to have been resumed. And under the law applicable it cannot be said that there was no substantial evidence to support the finding of the commission.

The judgment of the circuit court affirming the award of the commission denying compensation should be affirmed, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.