Bonnie Jean GRAVES and Susan Graves, Respondents,

v.

CENTRAL ELECTRIC POWER COOPER-ATIVE, Employer-Appellant,
and
Employers Mutual Liability Insurance Company, Insurer-Appellant.

No. 45942.

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1957.

Howard F. Major, Columbia, for appellants.

Hendren & Andrae, by Henry Andrae, Jefferson City, for respondent.

COIL, Commissioner.

This is a workmen's compensation case wherein employer and insurer have appealed from the circuit court's judgment affirming the award of the Industrial Commission whereby deceased employee's widow and minor child were awarded benefits in an amount now in dispute which, irrespective of all contingencies, exceeds $7,500.

Employer, Central Electric Power Cooperative, generates, transmits, and sells electric power to other electric power cooperatives. Employee, James Edwin Graves, worked in the transmission department as a substation superintendent and "trouble shooter." Robert W. Pawley was transmission superintendent and Chester Barnett, transmission line foreman. Graves, Pawley, and Barnett were the only three supervisory employees in the transmission department and were the only three technically qualified to direct repair crews when transmission breakdowns occurred.

Employer's generating plant was at Chamois and its general offices in Jefferson City. Those offices were closed and employees did not work on Saturdays and Sundays except one of the three mentioned transmission department supervisors, one of whom was on "stand-by" duty every Saturday, Sunday, and holiday. "Stand-by" duty meant that one of the supervisors would be available either at his residence, which was connected with the Chamois substation by private telephone, or in the Jefferson City area through a 2-way radio in a company station wagon, to receive emergency calls. Such person, upon receiving a call, would assemble a crew of employees and accomplish the necessary repair. Graves was paid $400 per month as salary for his total services, which included stand-by duty.

Employer had for several years conducted a company picnic and chose to continue that practice in 1955. Saturday, August 7, was designated as picnic day at Renn's Lake, a picnic area, including a small lake, close to Jefferson City. Written invitations were issued to each employee and his family. Attendance at the picnic was optional.

Employees Barnett and Pawley were to be out of the state on August 7 and, as noted, Graves was the only other technically qualified employee to perform stand-by duty on that date. It was therefore made certain that Graves would be on stand-by duty on the 7th, including that part of the day occupied by the picnic.

Graves had never before attended a company picnic. Before Pawley, Graves' immediate superior, left on vacation, he talked with Graves about attending the picnic. While Pawley's total testimony concerning

his conversations with Graves with respect to the subject of picnic attendance may support different inferences and conclusions, nevertheless our examination and analysis of that testimony causes us to be of the view that it constituted substantial evidence from which the finders of fact reasonably could have found the facts with respect thereto as they are now stated.

Because the picnic was a company project whose purposes were to promote a closer social relationship among employees and to provide employee recreation, and because Pawley knew that Graves had never before attended a picnic, and because Graves had been recently promoted to a supervisory capacity, and because both Pawley and Barnett, the only other persons in supervisory capacities in the transmission department, would not be in attendance at the picnic, and because Pawley wanted the supervisory personnel of the transmission department represented, and because Pawley was grooming Graves for the position of transmission superintendent at some future date, he, Pawley, insisted that Graves attend the picnic for his own benefit as well as for the benefit of the company. Pawley fully expected Graves to attend and would have considered his failure to have attended to have been unsatisfactory employee conduct. Pawley or no other person representing the employer ordered Graves to attend the picnic in the sense that he would either attend or be fired, but Pawley's insistence had the force of an order so far as concerned its effect upon Graves.

Graves thereafter accepted employer's written invitation and it was arranged that Graves would perform stand-by duty during the time of the picnic by being there present with the company station wagon equipped with the 2-way radio. As a result, Graves and his wife and two small children arrived at the picnic grounds about 4 p. m. Graves immediately parked his station wagon, hooked up the battery charger, and established contact through the 2-way radio with the generating plant at Chamois. He then turned the 2-way radio in position to receive, turned its volume control to "loud" so that the radio could be heard over the picnic area, and proceeded to take part in picnic activities.

Employer had reserved and rented the entire area for exclusive use and had rented and reserved some of the boats which were the property of the proprietor of the picnic grounds for the use of employer's guests. During the course of the afternoon Graves took Mrs. Graves, their two small children —a boy $4\frac{1}{2}$ and a girl $2\frac{1}{2}$, and a 7-year-old neighbor boy for a ride in one of the boats. After Graves had rowed across the small lake and was on the way back and when about 100–150 feet from the nearest shore, the Graves boy fell into the water. In attempting to rescue his son, Graves was drowned. Boating on the lake was one of the picnic activities provided by the employer, and employer's general manager personally knew that Graves and his family were taking a boat ride during the time that Graves was performing stand-by duty.

This is a case of first impression in this state. Essentially employer and insurer contend that there was no substantial evidence to support the finding that Graves' death resulted from an accident which arose out of and in the course of his employment, and that, on the contrary, the evidence established that at the time he met his death Graves was not performing any duty relating to his employment.

As we have heretofore noted, there was substantial evidence from which the finder of facts reasonably could have found that during the picnic and, of course, including the time when Graves was boating on the lake with his family, he, Graves, was performing the duties of his employment which he had been directed to perform and was performing those duties at the place and under the conditions and circumstances the company had created. Graves' employment responsibilities did not cease when he arrived at the picnic grounds but continued, and those responsibilities were the same and just as great when he was boating

on the lake as they would have been had he been sitting in the front seat of the station wagon during the time of the entire picnic. In both instances, he was performing his stand-by duty, to wit, awaiting and being available for an emergency call. And, as we have noted, in this case the company wanted Graves to perform that stand-by duty at the picnic grounds and by insisting that he be present at the picnic, in effect directed him to participate in the picnic activities while performing the duties of his employment.

It has been said that, as the terms are used in the Workmen's Compensation Law, an injury "arises in the course of employment" when it occurs within the period of the employment at a place where the employee may reasonably be and while he is reasonably fulfilling duties of his employment or doing something incidental thereto, and that an injury arises "out of the employment" when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421, 423 [4–6]. And while each case should be decided upon its particular facts without any necessary reference to a particular formula, nevertheless we have the view that the facts of the instant case bring it within the compass of the recognized formula stated above, unless, as we shall hereinafter discuss, Graves' attempt to rescue his son constituted an abandonment of his employment or broke the causal connection between the conditions under which his stand-by duty was to be performed and his resulting injury and death.

The view we take of this case perhaps may be more clearly indicated by considering the situation, which, in our opinion, would have obtained had Graves *fallen* out of the boat and drowned. That is to say, if, for example, Graves had been alone and for some reason the boat had overturned and Graves had drowned, assuming the preceding facts to have been the same

as those of the instant case, we should have no difficulty in holding that the Industrial Commission reasonably could have found that the accident resulting in Graves' death arose out of and in the course of his employment. That is because such an accident would have occurred within the period of his employment, i. e., at the time he was performing stand-by duty which he had been hired to perform at the place where his employer wanted him to be. Likewise, in the supposed situation, it would be clear enough to us that the accident would have arisen out of the employment because there would have been a causal connection between the conditions under which the stand-by duty was being performed and the resulting injury. As we have heretofore noted, the employer fixed the conditions under which the stand-by duty was to be performed by effectively causing Graves to engage in picnic activities at the same time he was performing his stand-by duty. Under such circumstances, an employer reasonably could have foreseen that an employee engaged in stand-by duty while also engaged in boating might meet with an accident incident to the boating. The work connection between the employment and the injury would in that case be clear enough.

The fact is, however, that Graves did not accidentally fall into the water and drown but intentionally entered the water in an attempt to rescue his 4½-years-old son. So, as we see it, the decisive question is whether, under the facts of this case, an employee who, at a time when he is in the course of his employment, drowns in an attempt to rescue a stranger to the employer, in so far as any master-servant relation is concerned, ceases during the rescue attempt to be in the course of his employment or thereby breaks the otherwise existing causal connection between his employment and the resulting injury. We have the opinion that under the facts of the instant case, as the Commission reasonably could have found and did find them

to be, employee's death was due to an accident arising out of and in the course of his employment.

We reach that conclusion by reason of considering these matters. As noted, employer directed employee to perform stand-by duty at the picnic grounds and, at the same time, wanted him to engage in picnic activities. Boating was one of those activities. Employer invited the members of all employees' families to the picnic and therefore knew or reasonably should have known that among the guests would be children of all ages, and knew or reasonably should have known that some of such children would be nonswimmers who would engage in the boating activity there provided. It should be made clear that while Graves' usual employment was in the transmission department as substation supervisor and "trouble shooter," nevertheless, his employment at the time in question, i. e., that Saturday, was stand-by duty which, as heretofore noted, was performed by being constantly available for an emergency call. And the circumstances and conditions created by employer and under which Graves was to perform that stand-by duty included the fact known to employer that Graves would participate in the picnic activities, including boating, at a time when small children would also be participating in boating and making other uses of the lake.

Under those circumstances, it seems apparent that the necessity for the attempt to rescue the Graves child who fell from a boat into the water was brought about by the conditions of Graves' employment. And it seems equally clear that employer reasonably could have foreseen that an employee performing stand-by duty under those conditions and circumstances might well face the necessity of attempting to rescue one from drowning. Not only could the employer reasonably have foreseen that such a necessity might arise, but we think that it must have been within the reasonable anticipation and expectation of employer that Graves, performing stand-by duty under the conditions noted, would respond to the emergency thrown in his path by reason of the fact that he was performing the duties of his employment under the conditions there existing.

What was said by the court in Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211, 213, is here apropos: "It is true that in the progress made in the field of workmen's compensation liability, the concept of what may properly constitute risks of the employment has gradually broadened to the point where it now may include those risks which arise out of the conditions under which the employment is carried on, so long as the risks are of such a character as to be reasonably regarded as inherent in the particular conditions in the light of human understanding and experience."

This, as noted, is a case of first impression in Missouri and we find no case like it elsewhere. See, however, Waters v. William J. Taylor, 218 N.Y. 248, 112 N.E. 727, L.R.A.1917A, 347; Stakonis v. United Advertising Co., 110 Conn. 384, 148 A. 334; Puttkammer v. Industrial Commission, 371 Ill. 497, 501, 21 N.E.2d 575, 577 [5], 573 [6]; O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483.

We have examined the cases relied on by appellants. We shall specifically refer to and discuss some of them.

Appellants rely primarily upon Stout v. Sterling Aluminum Products, Mo.App., 213 S.W.2d 244. That is a so-called "company picnic" case. There, employer closed the plant for the purpose of a picnic. All employees and their families were invited. Free tickets for food, drinks, and for rides on various contraptions in an amusement park were furnished. There was no obligation on any employee to attend and no employee received any pay for that day. The purpose of the picnic was to create good will and to promote fellowship among the employees. Stout, while leaving the picnic area, fell down some steps and hurt

his knee. It was held that the accident did not arise out of and in the course of his employment. The court pointed out that no master-servant relationship existed between Stout and his employer at the time of the accident. Without expressing an opinion as to the validity of the result, the fact remains that a decisive difference between that and the instant case is that clearly and certainly a master-servant relationship did exist between Graves and his employer at the time Graves was at the picnic grounds performing his stand-by duty. In other words, Graves was on duty; Stout was not. The decisive question in the instant case as to whether or not Graves abandoned his employment or broke the causal connection between his employment and the accident was not involved in the Stout case.

Appellants cite and rely upon Stone v. Blackmer & Post Pipe Co., 224 Mo.App. 319, 27 S.W.2d 459. There, an assistant fireman whose duty it was to fire furnaces, was killed when a tornado blew over a smokestack upon him. The court held that the tornado was an act of God and, therefore, unless the employee's risk was one of his particular employment which was not common to the public or which was increased by the circumstances of his employment, the injury had no work connection sufficient to permit compensation. Certainly that case sheds no light upon the decisive question of instant case.

In Ries v. De Bord Plumbing Co., Mo. App., 186 S.W.2d 488, an employee of a plumber was leaving an apartment building when an unknown assailant attacked and injured him. The court there said that an injury arises out of the employment when the employment is in some way responsible for the injury; that there was no showing that the employee in Ries was subject to any greater risk of injury inflicted by an unknown assailant than were members of the general public who might enter or leave an apartment house. Again, the case is not applicable.

We also note the case of McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344. That may be described as a "company ball team" case where the employer furnished uniforms and other equipment for a ball team which used the company name but on which the employees played after hours in public parks and received no pay for their voluntary efforts. The St. Louis Court of Appeals held that an injury suffered by a ball player under such circumstances did not arise out of and in the course of his employment and that ball playing was not an incident of the employment. That case is not helpful. The court there said, however, that an injury arises out of the employment " 'when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.' McNicol's Case, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306." 262 S.W.2d 346.

Appellants also rely upon Weaver v. Norwich Pharmacal Co., 347 Mo. 995, 149 S.W.2d 846. That was a case in which the court held that a salesman had deviated from his employment and had not resumed it at the time of injury; that the employee when injured was engaged in activities solely for his personal pleasure and while performing no duty relating to his employment.

In the case of Smith v. Seaman & Schuske Metal Works Co., 344 Mo. 559, 127 S.W.2d 435, an employee, after examining a furnace to be repaired, went to his home to change to a certain type of clothes, as was customary, and was injured during the trip. The court said he was on a mission of his own and denied compensation. Irrespective of the soundness of that decision, it is obvious that it has no application to the instant case.

In Foster v. Aines Farm Dairy Co., supra, this court held that the facts there were such that the Industrial Commission reasonably could have found, as it did find,

that the quarrel in which deceased employee was engaged at the time he was shot and killed had its origin and cause in the personal affairs of the parties involved and therefore the judgment of the circuit court affirming the finding of the commission and the consequent denial of compensation was affirmed. There is nothing there said which stands in the way of the result we have reached in the instant case.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.