Joaquín Gallart Mendía, Manager, etc., Appellant, v.
Industrial Commission of Puerto Rico, etc., et al.,
Respondents.

No. CI-63-8.        Decided December 16, 1963.

Donald R. Dexter, Miguel A. Guzmán Soto, and A. De Jesús
   Matos for appellant. A. Viera Martínez and Raúl Torres
   González for respondents.

Division composed of Mr. Chief Justice Negrón Fernández,
   Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The question for decision in this case is whether com-
pensation may be had for injuries sustained by two execu-
tives of the Department of Labor in an accident which
occurred in the parking area of a bowling alley after at-
tending an activity which included dancing, refreshments
and snacks, sponsored by the Bowling League of the em-
ployees of that Department for the purpose of presenting
the trophies to the winning teams. This is a question of
first impression in this Court.

The decision of the Industrial Commission granting to
interveners Planell and Pérez the full protection of the law
from which the Manager of the State Insurance Fund ap-
pealed to this Court was based on the testimony of several
witnesses and certain documents admitted in evidence. The
Secretary of Labor, Frank Zorrilla, testified that Planell is
Assistant Secretary of the Department of Labor, acts in the
absence of the Secretary, is his administrative assistant, and
has supervisory, directive, and controlling powers over the
work of the Department, and that Concepción Pérez Pérez
is in charge of the Office of Studies on Technological Unem-
ployment. The former had power to require the services and
attendance of the latter; that the Bowling League, composed

of employees of the Department, is an activity encouraged by the Office of Personnel of the Government of Puerto Rico and by the Department itself, "since it promotes greater friendship, good will among all the employees of the Department and creates a better climate for the work itself . . . promotes closer relationship and is useful in the efficiency of the work which the Legislature has assigned to the Department of Labor"; that he was invited to present the trophies in an interdepartmental championship in a bowling alley in the evening of April 21, 1961; that he asked Planell to attend and present the trophies in the event he (Zorrilla) could not attend because of illness; that nonetheless he attended and presented the trophies, the act having ended at 8:30 when he retired because he was ill; that the presentation of the trophies "was followed by a social activity with music and perhaps dancing . . . it is an activity consisting of different parts . . . because it was only one activity, the presentation of the trophies, and the social activity which followed"; that he did not know which was Planell's or Pérez' specific participation in that activity "other than the usual participation of all of us, the Secretary and all the officers, to see to the success of the activity . . . avoid incidents which occur occasionally, and to maintain cordial relations and the best atmosphere in order that the activity be beneficial to the best climate for all the employees"; that there were from 50 to 65 persons from the Department in the activity; that "The Department sponsors and encourages the employees and officers to organize recreational groups"; that the activity in question was organized by the Bowling League of the Department in Star Bowling Alley in Río Piedras; that he does not recall having given express orders to Planell or to Pérez when he retired . . . "I recall that I did not have a car and Concepción Pérez offered to take me home. I did not accept. . . . *Possibly I said to him that I appreciated it very much, but that he should stay with the fellow workers*"

(italics ours) ; that after the presentation of the trophies the activity could have been celebrated without Planell or Pérez, but that "in all the activities in which employees of the Department participate, which are to a certain extent encouraged by the Department, and in an activity for the presentation of trophies and the ensuing social act it is always advisable that there be officers who have certain control over the other fellow workers to prevent unpleasant incidents which frequently occur in these activities"; that the Department does not sponsor dances, but encourages recreational groups; that there is no incompatibility between a sports activity and an ensuing social activity. Witness López Corbera explained that the Bowling League of the employees of the Department of Labor was organized at the suggestion of the director of the bowling alley at a meeting called by Planell and Colón González at which the director was present. The meetings of the League and of its board of directors were held some times in the Department and others in the bowling alley, some times during work hours. Concepción Pérez Pérez testified that he did not receive an invitation for such activity from the Bowling League, and he attended upon the invitation of the Secretary of Labor to "help him supervise this type of activity usually made by the different heads of the Department"; his participation in the activity consisted "in helping with the supervision and organization of the activity"; that after the activity terminated at 1:30 a.m. "Planell and I stayed a little longer in order to help the officers who were in charge of the activity to surrender the premises"; that the accident which caused the injuries described in his testimony occurred on their way to their respective cars; that he did not receive express order from the Secretary of Labor or of Planell to take charge of the order in the activity while he was in the bowling alley, but that prior thereto he had received two calls from Planell to attend the activity. Israel Planell testified that the Bowling

League received the approval of the Department of Labor for the purposes of its organization, and has been considered by the Department as an official organization which, as part of the program of the Office of Personnel, encourages sports among its officers, since it helps to improve working conditions and understanding among its employees; at the beginning official time was taken off for the League; that the latter consults on its program with the witness; that he stayed for the recreational part of the activity after the presentation of the trophies, and lastly he explained how the accident occurred; that it is customary for the Secretary of Labor as well as for the witness to invite to those activities those heads of departments and persons who can help them because of their control over the other employees in order that the activity be more successful; that during the activity they spoke about official matters; that the recreational part is complementary to the sports part sponsored by the Office of Personnel. As to whether the recreational part is official, the witness answered that the social recreational part is always part of the program of that activity; that if he had absented himself, he would have asked one of the heads of bureaus to stay "to watch closely over the activity until its termination, because we are always much concerned with the orderly conduct of any function or activity carried out under the name of the Department." The testimony of the last witness, Altieri, did not add any fact to those already referred to by the aforesaid witnesses.

In its decision the Industrial Commission reviewed the documentary evidence presented in this case as follows:

". . . (1) Memorandum of December 23, 1954, of the then Director of the Office of Personnel, Ramón Torres Braschi, addressed to the heads of departments and government agencies, urging all government offices to organize recreational activities through sports tournaments, including all sports, cultural acts, dances and outings; (2) memorandum of February 19, 1960,

addressed to the recreation officers of all departments, agencies and public instrumentalities by Antonio Cuevas Viret, Director of the Office of Personnel, inviting them to a meeting to be held on Tuesday, March 1, 1960, at 8:30 a.m., in the conference room of the Board of Personnel, for the purpose of discussing the renewal of interdepartmental sports activities by the organization of tournaments for ladies and gentlemen; (3) letter of July 20, 1960, from Clegg, of the Star Bowling Alley, of Río Piedras, sent to the Department of Labor offering the services of that bowling alley; (4) letter of August 1, 1960, from Alfredo Colón González, Executive Assistant to the Secretary of Labor, addressed to Clegg, granting him an interview for August 5, 1960, to consider the 'bowling' matter; (5) letter of September 26, 1960, from the Association of Secretaries of the Department of Labor, addressed to Alfredo Colón González, inviting him, in agreement with Israel Planell, to a meeting to be held on Wednesday, October 5, 1960, at 9:00 a.m., which meeting was held in the office of Planell; according to a document admitted at that meeting, they agreed to organize 'a bowling team' of the Secretaries of the Department of Labor; (6) letter of October 18, 1960, from the Association of Secretaries, addressed to the Assistant of the Committee in charge of interviewing Clegg in connection with the organization of a bowling team of the Department; (7) memorandum of the Association of Secretaries reporting on the meeting of the committee with Clegg referred to above, and calling for a meeting to be held in the bowling alley; (8) circular of November 7, 1960, from the Board of Directors of the Bowling League advising that the bowling alley had offered its facilities *once again without charge*; (9) circular No. 2 of November 14, 1960, informing that the Bowling League of the Department of Labor had been officially organized at the meeting held November 10, 1960, and that the first tournament would commence on November 17, 1960; (10) circular No. 3 of January 10, 1961, addressed to the members of the Bowling League, on the renewal of the tournament on January 12, 1961; (11) schedule [*sic*] of games of the bowling team and a program-invitation for the activity of April 21, 1961, announcing the presentation of trophies by the Secretary of Labor, *dancing* to two musical ensembles, refreshments, and appetizers."

On the basis of this evidence the Commission concluded:

". . . Because of the nature of these activities, it is necessary to maintain discipline in order not to bring into discredit the name of the Department which sponsors and encourages such activity, and this is why it is always advisable and prudent that one or two top officers be present so as to prevent the occurrence of unpleasant incidents. This was the main reason for the presence of Planell and Pérez in that place."

For the reason stated, the Commission concluded that the accident sustained by Planell and Pérez occurred in the course and as a result of work and while in the performance of an activity inherent therein, and consequently it set aside the decision of the Manager of the State Insurance Fund disallowing compensation to the appellees and ordered the latter to extend to them the full coverage of the law. Commissioner De Jesús Mangual, in a concurring vote, added that according to the evidence the interveners attended the activity in question "upon the invitation and because they were bound in the discharge of their office."

Appellant assigns as errors the conclusions of the Commission that (1) when the accident occurred Planell and Pérez were discharging duties of their employment; (2) that the social activity in question was sponsored by the employer; and (3) that the cases of the interveners are protected by the existing law. We shall discuss these assignments jointly as being closely related.

Section 2 of the Workmen's Accident Compensation Act, No. 45 of April 18, 1935 (11 L.P.R.A. § 2), provides in part that:

"The provisions of this chapter shall be applicable to all such workmen and employees working for the employers to whom the following paragraph refers, as *suffer injury*, are disabled or lose their lives by reason of *accidents caused by any act or function inherent in their work or employment, when such accidents happen in the course of said work or employment, and as a consequence thereof* . . . .

"This chapter, being of a remedial character, shall be construed liberally, and any *reasonable doubt* that may arise as to its application with regard to the existence of causal relation between the work or occupation of the workman or employee and the injury, disability or death, or the occupational character of a sickness, shall be decided in favor of the workman or employee, or his beneficiaries.[1]

"This chapter shall be applicable to all employers employing one (1) or more workmen or employees covered herein, whatever their wages may be. The Commonwealth Government and the several municipal governments, boards, commissions, authorities, instrumentalities, public corporations, and agencies of the Commonwealth shall be considered as employers, and as such shall come under the provisions of this chapter as regards workmen, employees, and *officials* used by them." (Italics ours.)

■ Section 11 of that Act (11 L.P.R.A. § 12) provides that the review of the decisions of the Industrial Commission may be granted only on questions of law, or upon appreciation of the evidence when such evidence is of an expert nature. In the case under consideration the question involves a determination whether the accident which caused the injuries comes within the provisions of § 2 *supra*. It is, in the last instance, a determination of fact and of law and, consequently, it is reviewable as a question of law.

■ According to our holding in *Montaner, Mgr.* v. *Industrial Commission*, 53 P.R.R. 187, 189 (1938), the three requisites above-mentioned prescribed by § 2 must concur for an accident to be compensable; however, as we said later in *Candelaria* v. *Industrial Commission*, 85 P.R.R. 18 (1962), the requisites that the accident "(1) arising out of any act or function; (2) peculiar to the work or employment; (3) and which occur in the course of said work or employment, were the object, in the past, of subtle interpretations which

---

[1] This paragraph on liberal construction was added by Act No. 94 of June 22, 1957. This amendment incorporated the former doctrine of this Court to the same effect.

succeeded in paralyzing the remedial spirit of the new institution. Almost all of the theories which once governed and still govern compensations for civil negligence were applied to this type of special compensation, which undoubtedly does not partake of the nature of a civil action for negligence. Fortunately, modern jurisprudence has been correcting this erroneous approach and has been liberalizing the rules which developed with respect to the three classic concepts, creating a causal relation with the work itself, which permits a broader application of the implied social security which typifies the compensation for labor risk. For a clear sign of our own attitude to the problem, see: *Cordero, Mgr.* v. *Industrial Commission*, 61 P.R.R. 349, 353–55 (Del Toro) (1943)." *Gallart, Manager* v. *Industrial Commission*, 87 P.R.R. 16 (1962). *Cf. Torres* v. *Industrial Commission*, 85 P.R.R. 596 (1962); *Meléndez* v. *Industrial Commission*, 85 P.R.R. 54 (1962); *Atiles-Moréu, Mgr.* v. *Industrial Commission*, 85 P.R.R. 23 (1962); *Feliciano* v. *Industrial Commission*, 84 P.R.R. 188 (1961); *In re: Employees' Liability Assur. Corporation* (McNicol's Case), 102 N.E. 697 (Mass. 1913). See Note by David G. Budd, entitled *"Injury . . . Received in the Course of, and Arising Out of, The Injured Employees Employment,"* 30 Univ. of Cinn. L. Rev. 498 (1961).

Since the Manager of the State Insurance Fund extended administratively the coverage of the said Act to accidents occurring to public employees who participate actively in interagency sports competitions but not to the spectators, we will merely consider whether we would be warranted in law to extend the coverage of that law to the latter in recreational acts such as that held in this case, and more specifically, to the accidents sustained by executives of a government department who attend such act for the purpose of "avoiding incidents . . . and also to maintain good will and fellowship among those present." The Commission concluded "that the presence of Planell and Concepción in this activity sponsored

by the Department of Labor was for the benefit of the employer . . . and had the approval, consent and acquiescence of the chief of the Department, Secretary of Labor Frank Zorrilla."

The well-known author William R. Schneider sums up the rule applicable to cases such as this as follows:

"Generally, injuries suffered by an employee while watching, participating in, or going to or coming from recreational activities sponsored in whole or in part by the employer, are not compensable, since such injuries are usually sustained while the employee is not performing any duty for which he had been either expressly or impliedly employed. In other words the injuries cannot ordinarily be said to have resulted from an accident arising out of and in the course of the employment.

"A distinction is made, however, in those cases where the recreation which caused the injury, either directly or indirectly, was sponsored by the employer as a matter of business and not because of altruistic motives. That is, the employer exercised control or domination over the recreation for the purpose of developing better service and greater efficiency among the employees, thereby reaping a direct business benefit from the recreation sponsored." 6 Schneider, Workmen's Compensation 519.

█ In considering the compensability of injuries sustained during recreational activities, the courts have established a number of criteria for determining whether the employment and the recreation are so closely related as to warrant compensation. In *Moore's Case*, 110 N.E.2d 764, 766, 767 (Mass. 1953), the court enumerates them as follows:

"(1) The customary nature of the activity.

"(2) The employer's encouragement or subsidization of the activity.

"(3) The extent to which the employer managed or directed the recreational enterprise.

"(4) The presence of substantial pressure or actual compulsion upon the employee to attend and participate.

"(5) The fact that the employer expects or receives a benefit from the employees' participation in the activity, whether by

way of improved employer-employee relationships; through greater efficiency in the performance of the employees' duties, by utilizing the recreation as partial compensation or additional reward for their work, or for advertising the employer's business, or as an actual adjunct of his business."

The presence or absence of any of the factors enumerated does not solve the question. What is necessary in each case is an evaluation of the significance of each existing factor in connection with the activity as a whole. On that evaluation depends ultimately the decision on the proximity of the relationship between the employment and the recreational activity. See note entitled *Workmen's Compensation—Recovery for Recreational Injuries*, 25 N.Y.U.L. Rev. 149 (1950).

In *Adela Landry's Case*, 190 N.E.2d 208 (Mass. 1963), the same court had occasion to apply the doctrine announced in *Moore's Case, supra*, holding that the injury sustained by the employee while dancing at a Christmas party given by the employer to his employees at a hotel at which attendance was optional did not arise out of and in the course of the employment. Compensation was denied.

In *Wilson* v. *General Motors Corporation*, 84 N.E.2d 781 (N.Y. 1949), it was held that the injuries sustained by an employee in a sports competition, unrelated to his employment, remote from the place of work and its risk, not compelled or controlled by the employer, was not compensable, notwithstanding the employer provided some financial aid for such activity, adding that *"Too tenuous and ephemeral is the possibility that such participation might perhaps indirectly benefit the employer by improving the workers' morale or health or by fostering employee good will."* (Italics ours.)

In *Stout* v. *Sterling Aluminum Products Co.*, 213 S.W.2d 244 (Mo. 1948), it was said that the speculative and intangible benefits the employer could obtain from the creation of good will between the employer and the employees, standing

alone, was not sufficient to sustain the existence of relationship between master and servant at the time the employee sustained the injury in a picnic sponsored by the employer, in connection with which the latter had chosen the place and provided the food, the drinks and rides on different devices in an amusement park. See 1 Larson, Workmen's Compensation Law 328, § 22; the note entitled *Recreational Injuries & Workmen's Compensation: Infusion of Common-Law, Agency—Tort Concepts*, 34 Ind. L.J. 310 (1959); 41 Neb. L. Rev. 29, 30 and 31 (1961); and note entitled *Workmen's Compensation—Recovery Allowed for Death of 24 Hour Employee in a Semi Isolated Area Incurred During a Basically Recreational Activity*, 34 Rocky Mt. L. Rev. 273 (1962); 23 NACCA L.J. 147 (1959).

In *F. Becker Asphaltum R. Co.* v. *Industrial Commission*, 164 N.E. 668 (Ill. 1928), it was held that a picnic which the employer customarily held for his employees for the purpose of creating a good feeling among them, boosting their morale and aiding business, had no relation to the purpose for which the injured was employed, and, consequently, that the injuries sustained by that employee on his way to the activity were not recoverable.

■ An analysis of the best-known cases in which compensation was allowed for injuries sustained by an employee in a recreational activity shows that in those cases one or several of the following circumstances have concurred:

(1) The employer organized the activity and subsidized part or all of the cost thereof.

(2) The accident occurred within the employer's regular work area.

(3) The enterprise concerned was a commercial enterprise (sales, etc.) which may derive a direct benefit from the success of the activity.

(4) The accident occurred during work hours or shortly before the commencement or after termination of the daily task.

(5) The employer effectively induced the employees to participate in the activity by offering to pay for the hours of the celebration.

(6) The employer chose the place for the activity, being therefore responsible for the danger of the place chosen.

(7) The employer provided transportation to and from the place of the activity.

(8) The activity itself was by way of reward by the employer to his employees.

(9) The practice of holding such activity was so deeply rooted as a tradition in the employment that it constituted part thereof for the employees.

(10) The employer took the occasion to address himself to the employees by means of speeches urging them to develop greater work efficiency.

(11) The jurisdiction was one where the statute expressly provides that in any claim of this nature the employee shall be covered by the presumption that the accident is recoverable until it is otherwise shown.

(12) The claimants participated in the activity or sports carried out.

*O'Leary* v. *Brown-Pacific-Maxon*, 340 U.S. 504 (1951); *Torres* v. *Triangle Handbag Mfg. Co.*, 211 N.Y.S.2d 992 (N.Y. 1961); *Noble* v. *Zimmerman*, 146 N.E.2d 828 (Ind. 1957) ;[2] *Game & Fish Department* v. *Pardoe*, 363 P.2d 1067

---

[2] The doctrine of *O'Leary, supra,* was applied in *Noble, supra,* in which compensation was allowed for the death of an employee who drowned while attempting to rescue two persons in a channel running along a recreation center in Guam provided by the employer engaged in construction work. The ground adduced in this case for allowing compensation was that the conditions or duties of the employment created a special danger zone from which the danger arose. See the dissenting opinion in *Noble.*

(Colo. 1961); *Graves* v. *Central Electric Power Cooperative*, 306 S.W.2d 500 (Mo. 1957); *Wiseman* v. *Industrial Accident Commission*, 297 P.2d 649 (Cal. 1956); *Turner* v. *Willard*, 154 F.Supp. 352 (1956); *Fagen* v. *Albany Evening Union Co.*, 24 N.Y.S.2d 779 (N.Y. 1941); *Tedesco* v. *General Electric Co.*, 114 N.E.2d 33 (N.Y. 1953); *Kelly* v. *Hackensack Water Co.*, 77 A.2d 467 (N.J. 1950); *Ott* v. *Industrial Commission*, 82 N.E.2d 137 (Ohio 1948); *Linderman* v. *Cownie Furs*, 13 N.W.2d 677 (Iowa 1944); *Kenny* v. *Lord & Taylor, Inc.*, 173 N.E. 853 (N.Y. 1930).

The Industrial Commission did not cite specific case law in support of its conclusion in this case. Commissioner De Jesús Mangual did so in his concurring vote, pointing out the criteria or factors above enumerated which should be taken into consideration in cases such as the present. In support of his conclusion that the risk to which the Department of Labor, the employer herein, exposed Planell and Pérez is reasonably incidental to his employment, he cites the cases of *Graves, supra, Turner, supra,* and *Bacó* v. *Industrial Commission*, 52 P.R.R. 836 (1938). The decisions in these cases do not warrant nor support the conclusion of Commissioner De Jesús Mangual. In *Graves, supra,* the accident occurred while an employee attended a picnic which the employer conducted every year for its employees and to which his superior insisted that he attend while at the same time he performed stand-by duties of his office keeping in contact by radio with an electric plant of the employer. Compensation was allowed for the death of the employee. The court held that the accident in which the employee was drowned arose from the conditions of the employment and that this condition was foreseeable. Unlike the case at bar, in the cited case the *employer* provided the activity which was already a practice and a custom in the employment and it chose the place for the activity.

In *Turner, supra,* the accident in which the employee was injured occurred while he, during work hours and within the working area, was on his way in a jeep to see another employee in connection with a bowling league organized by the *employer* for recreational purposes of the employees. The injured employee was captain of a team in that league and the other was the president of the league. In awarding compensation the court pointed out that at the time of the accident the employee was on his way, during work hours and in a vehicle of the employer, to discuss some matter which was as important for the regular employment as if it were related to the construction itself. The marked difference between this case and the case under consideration is that in *Turner* the accident occurred in the place of employment, during work hours, while the employee was driving a vehicle of the employer, and it involved sports in which the employee was a participant. In *Bacó, supra,* compensation was disallowed for an accident sustained by an employee while riding a car from the office to his home to have lunch and then pick up the mail and take it to his employer. Compensation was disallowed in this case because "it cannot be contended that the duty to pick up the mail was what created the necessity for the trip, and since, although for some reason the employee might not have had to get the mail, the trip would have gone forward in any event. The principal reason for the trip was to eat lunch, getting the mail was incidental." Obviously this case is not in point.

■ In the case before us the Department of Labor did not choose the place for the party outside the employer's regular work area, nor conducted it, nor subsidized the expenses, nor required the presence of Planell and Pérez in the discharge of their respective offices. At the most, he required the assistance of Planell for the presentation of the trophies and the latter in turn required that of Pérez. However, after attending personally and then retiring from the

activity, the Secretary of Labor did not ask Pérez to stay with his fellow workers, as alleged by the Commission in its decision, but that he appreciated Pérez' offer to take him home "but that he should stay with the fellow workers," that is, to stay at the party enjoying it with the others. Nor does it appear from the evidence that the party in question was held during work hours, nor that it was a practice or custom in the Department of Labor, nor that it was controlled or conducted by the Department; on the contrary, it was sponsored, organized, subsidized, programmed and conducted by the employees themselves. The existence of any of the factors or criteria stated in *Moore's Case, supra,* has not been established in this case to warrant the award of compensation in similar situations. Nor does the evidence disclose the concurrence of any of the circumstances under which compensation was allowed in the cases *supra.*

Conceding that the activity in question, as testified by the Secretary of Labor, "promotes greater friendship, good will, among the employees and officers of the Department, which in turn also helps to create a better climate for the work itself," the possibility that Planell's and Pérez' participation in that activity could perhaps benefit the employer indirectly "is tenuous and ephemeral," as stated in *Wilson, supra,* and confirmed in other language in *Stout, supra,* and *F. Becker Asphaltum R. Co., supra.* In view of the nature of the festivity conducted by the employees in the place and form and manner which they themselves chose, the fact that Planell and Pérez imposed upon themselves, as executives of the Department of Labor, the obligation to maintain order so as to prevent unpleasant incidents which could detract from the purpose thereof, can in nowise warrant the conclusion that such actions on their part were so closely and intimately related to the functions of their respective offices, had such a proximate causal relation, that the accident which caused the injuries arose from an act or function in-

herent in their work and which occurred in the course of and as a result thereof.

The decision entered by the Industrial Commission on November 21, 1962 will be set aside.

Mr. Chief Justice Negrón Fernández dissented.