Buddy M. ANDERS, Appellant,

v.

A.D. JACOBSON, INC., Respondent.

No. WD 54113.

Missouri Court of Appeals,
Western District.

June 30, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 28, 1998.

As Modified July 28, 1998.

Application for Transfer Denied
Aug. 25, 1998.

G. Spencer Miller, Kansas City, for appellant.

James J. Cramer, Overland Park, Kansas for respondent.

Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

Buddy M. Anders appeals from the trial court's dismissal for lack of subject matter jurisdiction of his claim against A.D. Jacobson, Inc.

In March, 1994, Anders was an employee of TinMaster, Inc. TinMaster was a sheet metal subcontractor for A.D. Jacobson, who was the mechanical subcontractor for Walton Construction. Walton Construction was the general contractor hired by the City of Kansas City for a particular phase of the Bartle Hall Expansion.

On March 14, 1994, Anders was working with a fellow TinMaster employee as well as two employees of A.D. Jacobson. This "composite crew" was attempting to transport a 3,900–pound air conditioning coil unit. During the process of the move, the unit fell and crushed A.D. Jacobson employee Todd Willis.[1] While attempting to extricate the trapped man, Anders was himself injured.

On May 6, 1994, Anders filed a workers' compensation claim for his injuries. The Aetna Life and Casualty Company provided workers' compensation insurance to TinMaster and to all other employers at the Bartle Hall expansion site. In its Answer to Anders' Claim for Compensation, Aetna admitted that Anders was "an employee of TinMaster, Inc. operating under and subject to the Missouri Workers' Compensation Law."

On January 3, 1996, Anders filed a negligence suit against A.D. Jacobson for injuries he sustained during his attempt to rescue Todd Willis. Anders alleged A.D. Jacobson was negligent in the way its employees tried

1. Willis eventually died as a result of his injuries.

to move the air conditioning coil. He prayed for damages for physical injuries, pain and suffering, and psychological distress. A.D. Jacobson answered, pleading an affirmative defense that Anders was a statutory employee of A.D. Jacobson, and was therefore limited to seek recovery in workers' compensation. On August 19, 1996, A.D. Jacobson filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, claiming the court was without jurisdiction to hear the case because Anders' exclusive remedy was under the provisions of the Workers' Compensation Act. Thereafter, on March 7, 1996, the trial court dismissed Anders' claim for lack of subject matter jurisdiction, finding that Anders was the statutory employee of A.D. Jacobson. It is from the grant of that motion that Anders now appeals.

In his sole point on appeal, Anders asserts that he was not performing work in the usual course of A.D. Jacobson's business at the time he was injured, but rather was engaged in rescue activities. Accordingly, he contends he was not a statutory employee of A.D. Jacobson under § 287.040 [2] at the time of the injury, and therefore the trial court erred in dismissing his petition for lack of subject matter jurisdiction.

The pertinent statute, § 287.040.1 provides:

Any person who has work done under contract on or about his premises which is an operation of the usual business he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

The determination of whether the Workers' Compensation Act applies is a question of fact. *Mooney v. Missouri Athletic Club,* 859 S.W.2d 772, 773 (Mo.App. E.D.1993). As such, the standard of review of the trial court's dismissal of Anders' petition is one for abuse of discretion. *Id.*

■ In *Bass v. National Super Markets, Inc.,* 911 S.W.2d 617 (Mo. banc 1995), our Supreme Court reexamined the manner in which determinations of statutory employment under § 287.040 are made. The Court observed that the statute itself makes clear that "statutory employment exists when three elements co-exist: (1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of the business of the alleged statutory employer." *Bass,* 911 S.W.2d at 619–20. The parties agree in the case *sub judice* that the first two elements are not at issue. A.D. Jacobson contracted with TinMaster for the sheet metal work on the project, and Anders' injuries occurred on the project premises. It is the third element which is at issue, whether the injuries occurred in the usual course of the A.D. Jacobson's business.

In *Bass,* the Court adopted what it described as the "routine/frequent test" to determine whether the work is within the "usual business" of the putative employer. *Id.* at 621. Using that test, the Court defined "usual business" as used in § 287.040 as:

those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.

*Id.* Applying this definition to the facts of the case at bar, it is clear that the work being performed and leading up to the incident which caused Todd Willis to be crushed and placed in a position of danger was part of A.D. Jacobson's "usual business." A.D. Jacobson, as a mechanical contractor, is regularly and routinely involved with moving, lifting and otherwise installing heavy pieces of equipment, such as air conditioning coil units, on construction sites. It is undisputed that Anders, although an employee of TinMaster, the sheet metal subcontractor, was working on a "composite crew" with A.D. Jacobson employees at the time, and was engaged in

---

**2.** All statutory references will be to RSMo 1994, unless otherwise noted.

work contemplated in the contract between A.D. Jacobson and TinMaster. Thus, absent the subcontract with TinMaster, A.D. Jacobson would have had to hire regular employees to perform the work.

Nonetheless, Anders first argues that the manner in which A.D. Jacobson was moving the coil unit was "novel," and therefore the work was not in the *usual* course of A.D. Jacobson's business. The argument is devoid of merit. "The manner in which the independent contractor performed its contractual obligations is not relevant to the section 287.040 inquiry." *Id.*

Next, Anders contends whatever statutory employee relationship he may have had with A.D. Jacobson ceased the minute he undertook to rescue Todd Willis. He asserts that rescue attempts are not routinely and regularly done by A.D. Jacobson employees nor by sheet metal workers. Moreover, he argues that the attempted rescue of Todd Willis was not an activity contemplated in the contract between A.D. Jacobson and TinMaster. Accordingly, Anders reasons that even if he was a statutory employee of A.D. Jacobson while moving the cooling coil, he was not operating as such when he attempted to rescue Todd Willis. A.D. Jacobson counters with the argument that "an employee who engages in rescue work on the premises of his employer and for the benefit of the employer of the injured victim is certainly engaged in work which 'arises out of' the general work of the employer," and, therefore, the would-be rescuer is still a statutory employee.

Both parties suggest this is a case of first impression in Missouri, and joust about discussing cases from other jurisdictions, notably Tennessee and Wisconsin. However, we perceive the issue was resolved by our Supreme Court in *Graves v. Central Electric Power Cooperative*, 306 S.W.2d 500 (Mo. 1957).

In *Graves*, James Graves, an employee of Central Electric Power Cooperative was on "stand-by" duty on August 7, 1955. Stand-by duty meant Graves had to be available, via a private phone at his home or a two-way radio in his company car, to answer emergency calls for repairs at the Central Electric generating plant. Also on August 7, Central Electric sponsored a company picnic. Attendance at the picnic was optional for most employees, but Graves was strongly encouraged to attend by one of his supervisors. While at the picnic, Graves was always within ear-shot of the company two-way radio and was prepared to answer any emergency calls. During the course of the picnic, Graves, his wife, their two children and another child took a ride in a rowboat. While in the boat, Graves' 4½-year-old son fell into the water. Graves went into the water in an attempt to rescue his son and drowned.

Graves' widow and minor children filed a workers' compensation claim seeking benefits as a result of Graves' death. The Commission entered an award granting benefits to the widow and children, which was affirmed by the circuit court. The employer and insurer appealed, arguing that Graves' death did not arise out of and in the course of his employment because his death occurred because he was attempting to rescue his son from a position of danger. In reaching its decision, the Court first identified the issue:

> So, as we see it, the decisive question is whether, under the facts of this case, an employee who, at a time when he is in the course of his employment, drowns in an attempt to rescue a stranger to the employer, in so far as any master-servant relation is concerned, ceases during the rescue attempt to be in the course of his employment or thereby breaks the otherwise existing causal connection between his employment and the resulting injury.

*Id.* at 503. The Court ultimately decided Graves' death was "due to an accident arising out of and in the course of his employment." *Id.* at 504. In doing so, the Court considered several factors. Graves was on stand-by duty while he was at the picnic. *Id.* He was, at all times, available to answer emergency calls from the generating plant. *Id.* He was also asked to be in attendance at the picnic, and boating was one of the activities the company offered at the picnic. *Id.* The company invited employees and their families. *Id.* As a result, the employer should have known some of the children would take advantage of the boating activities and that

some of those children would be non-swimmers. *Id.* Based·on these factors, the Court concluded:

[T]he circumstances and conditions created by employer and under which Graves was to perform that stand-by duty included the fact known to employer that Graves would participate in the picnic activities, including boating, at a time when small children would also be participating in boating and making other uses of the like.

Under those circumstances, it seems apparent that the necessity for the attempt to rescue the Graves child who fell from a boat into the water was brought about by the conditions of Graves' employment. And it seems equally clear that employer reasonably could have foreseen that an employee performing stand-by duty under those conditions and circumstances might well face the necessity of attempting to rescue one from drowning. Not only could the employer reasonably have foreseen that such a necessity might arise, but *we think that it must have been within the reasonable anticipation and expectation of employer that Graves ... would respond to the emergency thrown in his path by reason of the fact that he was performing the duties of his employment under the conditions there existing.*

*Id.* (Emphasis added). Finally, in reaching its decision, the *Graves* Court implicitly rejected any contention that "Graves' attempt to rescue his son constituted an abandonment of his employment or broke the causal connection between the conditions under which his stand-by duty was to be performed and his resulting injury and death." *Id.* at 503.

■ *Graves* is dispositive of the instant appeal. It stands for the proposition that an employee's attempt to rescue one placed in harm's way by virtue of the employment conditions created by the employer and under which the employee is then operating, constitutes a continuation of the performance of the duties of the employee's employment.

In the instant appeal, the accident which placed Todd Willis in a position of danger occurred when Anders and the other workers were performing the regular duties of their employment. Anders observed Willis' plight

and responded to the emergency thrown in his path. The emergency occurred while he was performing the duties of his employment and his response thereto was a continuation of the performance of those duties. Consequently, Anders was still a statutory employee of A.D. Jacobson when he undertook the attempted rescue and was himself injured, and his rescue efforts constituted a continuation of his employment duties under the conditions there existing.

While the *Graves* Court made no express reference to the legislative command that the workers' compensation act be liberally construed, it is implicit that the Court was mindful of the dictate. The Supreme Court's decision in *Bass* reaffirmed that "courts must continue to give the Act a liberal reading, deciding close cases in favor of workers' compensation coverage." *Bass,* 911 S.W.2d at 621. We find nothing in *Bass* which would call into question the holding in *Graves.*

The workers' compensation law is substitutional, supplanting all other common law claims of an employee if the act applies. § 287.120; *State ex rel. McDonnell Douglas Corp. v. Ryan,* 745 S.W.2d 152, 153 (Mo. banc 1988). In cases cognizable under the act, the Commission has exclusive jurisdiction. *Id.* at 154. "A motion to dismiss for lack of subject matter jurisdiction is the proper method to raise the defense of workers' compensation." *Id.* at 153. Consequently, having determined that Anders was a statutory employee of A.D. Jacobson at the time he was injured, and therefore subject to the act, we conclude that the trial court did not err in dismissing his action for lack of subject matter jurisdiction.

The judgment is affirmed.

All concur.